**SISTERS OF CHARITY OF THE INCARNATE WORD d/b/a St. Edward Hospital, Appellant,**

v.

**Orlia Charles DUNSMOOR and Janice Dunsmoor, Appellees.**

**No. 3–91–173–CV.**

Court of Appeals of Texas, Austin.

May 27, 1992.

Rehearing Overruled June 17, 1992.

Scott R. Kidd and Elizabeth Zeck, Brown Maroney & Oaks Hartline, Austin, for appellant.

Alan J. Winters, Houston, for appellees.

Before CARROLL, C.J., and ABOUSSIE and KIDD, JJ.

KIDD, Justice.

Orlia Charles Dunsmoor and Janice Dunsmoor (the "Dunsmoors") brought suit against the Sisters of Charity of the Incarnate Word d/b/a St. Edward Hospital ("Hospital") and three doctor-defendants to recover for injuries Mr. Dunsmoor received as a result of medical treatment at St. Edward Hospital. The doctor-defendants settled before trial, leaving the Hospital as the sole defendant. After a two-week trial, the jury returned a verdict in favor of the Dunsmoors, and the district court rendered a final judgment. The Hospital now files this limited appeal complaining that the district court erred in its calculation of the final judgment award.

## FACTUAL AND PROCEDURAL BACKGROUND

The Dunsmoors, husband and wife, filed their original petition in this cause on October 14, 1988. In the petition, Mr. Dunsmoor claimed that he was injured as a result of medical treatment he received from the three doctor-defendants while a patient at St. Edward Hospital.

Nearly a year later, on October 20, 1989, the Dunsmoors settled all claims against the doctor-defendants. The doctors agreed to pay the Dunsmoors $302,000.00 in cash and purchase an annuity which would pay Mr. Dunsmoor $850.00 per month for life, increasing by three percent compounded annually, with a guaranteed term of at least thirty years. At trial, the annuity was evaluated at $170,816.00.

In order to reduce the amount of damages recoverable at trial, the Hospital elected a dollar-for-dollar credit for the Duns-

moors' settlement agreement with the doctor-defendants. *See* Tex.Civ.Prac. & Rem. Code §§ 33.012(b)(1), .014 (Supp.1992). This election was timely made in writing before the case was submitted to the jury. After approximately two weeks of trial, the jury returned a verdict against the Hospital in the amount of $703,800.00.

The district court used the verdict amount as a starting point from which to calculate the final judgment. Prejudgment interest on the entire jury verdict of $703,800.00 was calculated at ten percent simple interest per annum from October 14, 1988, (date suit filed) to October 20, 1989, (date of settlement agreement). This amount was added to the jury verdict for a total sum of $774,758.47. Then a credit of $472,000.00 (value of the total settlement agreement) was subtracted from $774,758.47 as of the settlement date October 20, 1989, and simple interest of ten percent per annum on the balance of $302,758.47 accrued until March 14, 1991 (date of final judgment). On March 14, 1991, the district court rendered the final judgment in favor of the Dunsmoors for a total of $345,144.66. Postjudgment interest was to accrue on this final judgment amount at the rate of ten percent per annum, compounded annually, from the date of final judgment until the date actually paid.

On March 26, 1991, the Hospital filed this appeal and, on April 12, 1991, paid the Dunsmoors $278,768.52 in partial satisfaction of the judgment. This appeal is limited to the amount of credit given for the settlement with the doctor-defendants, the amount of prejudgment interest awarded, and the amount of postjudgment interest awarded.

## PREJUDGMENT INTEREST

Interest has been defined in Texas as "the compensation allowed by law for the use or forbearance or detention of money." Tex.Rev.Civ.Stat.Ann. art. 5069–1.01(a) (1987 & Supp.1992). The Texas Supreme Court has defined prejudgment interest as "that interest calculated on the sum pay-able to the plaintiff from the time of his loss or injury to the time of judgment."

*Republic Nat'l Bank v. Northwest Nat'l Bank,* 578 S.W.2d 109, 116 (Tex.1979).

### 1. *Prejudgment Interest at Common Law*

Texas courts have long held that prejudgment interest "is recoverable as a matter of right where an ascertainable sum of money is determined to have been due and payable at a date certain prior to judgment." *Id.* at 116. The law establishing this "right" to recover prejudgment interest originated in the 1897 Texas Supreme Court decision of *Watkins v. Junker,* 40 S.W. 11, 12 (Tex.1897), which held that "if interest be properly an element of damages in any case, then it be so as a matter of law."

In dicta, however, the *Watkins* court stated that "interest, ... cannot be allowed upon damages arising from assault and battery, libel and slander, seduction, false imprisonment, *nor for personal injuries and the like." Id.* at 12 (emphasis added). The court's justification for excluding those cases from prejudgment interest accrual was twofold. First, the measure of damages in personal injury cases was not fixed at any time before trial, and second, the jury had a wide discretion in determining damages, making such awards too uncertain to serve as a basis for interest recovery. *Id.* at 12. Therefore, under *Watkins,* prejudgment interest was not recoverable in personal injury cases.

For eighty-eight years, Texas courts followed the *Watkins* dicta concerning prejudgment interest. Then, in *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex.1985), the Texas Supreme Court overturned *Watkins* and held that prejudgment interest is recoverable in personal injury, wrongful death and survival action cases. *See generally* Don W. Cloud, Jr., Note, Cavnar v. Quality Control Parking, Inc.: *Prejudgment Interest Is Now Recoverable In Personal Injury, Wrongful Death and Survival Action Cases,* 38 Baylor L.Rev. 385 (1986). The *Cavnar* court stated that "[p]laintiffs have been permitted to recover prejudgment interest on both liquidated and unliquidated claims in both contract and tort disputes," making "the

distinction between claims in which the damages are or are not fixed and ascertainable ... forced and artificial." *Cavnar* at 553. Furthermore, stated the *Cavnar* court, "the measure of recovery for damages in a personal injury action is no more uncertain and unliquidated than that in many other tort and contractual disputes where prejudgment interest has been allowed." *Id.*

Since no statute controlled the award of prejudgment interest in personal injury cases, the *Cavnar* court followed the holding in *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480 (Tex.1978). In *Phillips Petroleum*, the Texas Supreme Court abandoned the distinction between interest *eo nomine* and interest as damages, stating that prejudgment interest could be awarded based on equitable principles as an exception to the "interest *eo nomine*" rule. *Id.* at 486–87. The *Cavnar* court followed these equitable principles and reasoned that a judgment award without prejudgment interest would not fully compensate a plaintiff since the opportunity to invest and earn interest on the amount of damages between the time of the occurrence and the time of the judgment would be lost. *Cavnar*, 696 S.W.2d at 552.

The *Cavnar* court held that "a prevailing plaintiff may recover prejudgment interest compounded daily (based on a 365-day year) on damages *that have accrued by the time of judgment.*" *Id.* at 554. The interest rate on those damages accrued at the prevailing rate that existed on the date judgment was rendered, and the starting date for accrual was "six months after the occurrence of the incident giving rise to the cause of action." *Id.* at 554–55. However, the *Cavnar* court did not extend prejudgment interest to future damages since they were unaccrued before trial, or to punitive damages since they were intended to punish instead of compensate. *Id.* at 555–56. If a plaintiff failed to segregate past and future damages, the *Cavnar* court held that prejudgment interest was not recover-

able on either element of damages. *Id.* at 556.

### 2. *Statutory Prejudgment Interest*

Since 1985, Texas courts have often cited to *Cavnar* with few limitations or distinctions. The most comprehensive change to the *Cavnar* decision came not through case law but through legislative reform. In 1987, the Texas Legislature passed a comprehensive package of legislation, commonly known as "tort reform." Joseph Sanders and Craig Joyce, *"Off to the Races": The 1980s Tort Crisis and the Law Reform Process*, 27 Hous.L.Rev. 207, 213 (1990). One part of this legislation added section 6 to article 5069–1.05, which had previously focused primarily on postjudgment interest. Tex.Rev.Civ.Stat.Ann. art. 5069–1.05, § 6 (Supp.1992). Section 6 codified, modified, and overturned portions of *Cavnar*.

The Texas Legislature codified *Cavnar* by mandating recovery of prejudgment interest in personal injury, wrongful death, and property damage cases. Tex.Rev.Civ. Stat.Ann. art. 5069–1.05, § 6(a) (Supp.1992). However, the amended statute [1] shortened the time period for which prejudgment interest could accrue. Instead of six months after the incident, as established by the *Cavnar* court, the commencement date for the accrual of prejudgment interest was changed to the 180th day after receipt of written notice of a claim by the defendant or the filing date of the suit, whichever occurs earlier. *Id., Cavnar*, 696 S.W.2d at 554–54. The prejudgment interest statute changed from daily-compound to annual-simple interest, tolled accrual for settlement offers made in writing, and allowed the trial court discretion as to accrual or nonaccrual of prejudgment interest during periods of trial delay. John T. Montford & Will G. Barber, *1987 Texas Tort Reform: The Quest for a Fairer and More Predictable Texas Civil Justice System* (pt. 1), 25 Hous.L.Rev. 59, 105 (1988). Further, the scope of prejudgment interest was expand-

1. Tex.Rev.Civ.Stat.Ann. art. 5069–1.05, § 6 (Supp.1992); hereinafter referred to as the "pre-judgment interest" statute.

ed beyond past damages, as set out in *Cavnar*, to include those future damages awarded in the judgment. Montford & Barber, *supra*, at 103.

During the 1987 session, the Texas Legislature did not directly address the effect of accepted settlements on prejudgment interest. The legislature did, however, enact statutes that focused on settlement *offers*, which are helpful in interpreting the legislative intent in this particular area.

### DISCUSSION AND HOLDING

The prejudgment interest statute and section 33.012 [2] of the Civil Practice and Remedies Code (the "comparative responsibility" statute) became effective September 2, 1987, and the legislature provided that these statutes would apply to actions commenced on or after this effective date. Since the Dunsmoors filed their original petition on October 14, 1988, these statutes govern the disposition of this cause.

The Hospital brings forth eight points of error from the district court. Under points one and two, the Hospital claims that the court erred in its calculation of prejudgment interest because it allowed prejudgment interest to accrue on the amount of the jury verdict up to the date of settlement, rather than on the final judgment amount obtained after reducing the jury verdict by the credit for the settlement received by the Dunsmoors. Under points three and four, the Hospital claims that the court erred in its calculation of prejudgment interest because it compounded prejudgment interest. Under points five and six, the Hospital claims that the court erred · in the credit given for the settlement with the doctor-defendants because it assigned an incorrect value to the annuity purchased for the Dunsmoors. Finally, under points seven and eight, the Hospital claims that the court erred in the calculation of postjudgment interest because it allowed postjudgment interest to accrue on the prejudgment interest amount included within the final judgment. Since both parties agree that the district court erred in compounding the prejudgment interest, points of er-

ror three and four are hereby sustained without discussion.

The Dunsmoors bring one cross-point of error arguing that the district court should have calculated prejudgment interest on the entire verdict amount from the date of filing until the date final judgment was rendered, and then reduced the resulting amount by the settlement credit.

*Points 1 & 2: Calculation of Prejudgment Interest*

In the first and second points of error, the Hospital contends that the district court erred in its calculation of prejudgment interest because it allowed prejudgment interest to accrue on the amount of damages awarded by the jury up to the date of settlement, rather than on the final judgment amount. The Hospital contends that the district court should have reduced the amount awarded in the jury verdict by the credit for the settlement amount received by the Dunsmoors before allowing prejudgment interest to accrue. We agree.

The prejudgment interest statute states that:

> (a) *Judgments* in wrongful death, personal injury, and property damage cases *must include prejudgment interest.* Except as provided by Subsection (b), (c), and (d) of this section, *prejudgment interest accrues on the amount of the judgment* during the period beginning on the 180th day after the date the defendant received written notice of a claim or on the day the suit is filed, whichever occurs first, and ending on the day preceding the date judgment is rendered.

Tex.Rev.Civ.Stat.Ann. art. 5069–1.05, § 6(a) (Supp.1992) (emphasis added).

Given the clear legislative mandate that prejudgment interest accrues on the "judgment amount," the only question before the district court in calculating the prejudgment interest was a determination of the appropriate "judgment amount."

---

**2.** Tex.Civ.Prac. & Rem.Code Ann. § 33.012 (Supp.1992).

A. Determining the Judgment Amount—Settlement Credits

■ The 1987 tort reforms adopted a complicated provision regarding settling and nonsettling defendants. *See* Tex.Civ. Prac. & Rem.Code Ann. § 33.012 (Supp. 1992). Under prior law, former section 33.-014 of the Civil Practice and Remedies Code provided a dollar-for-dollar credit for all settling parties unless a settling defendant was joined in the lawsuit and the jury had determined that defendant's percentage of negligence. Civil Practice and Remedies Code, 1985 Tex.Gen.Laws, ch. 959, sec. 1, § 33.014, at 3271 (Tex.Civ.Prac. & Rem.Code Ann. § 33.014, since amended); *see also* Sanders & Joyce, *supra*, at 268–69. If such were the case, the settlement functioned as a release of the portion of the judgment attributable to the settling defendant, and the nonsettling defendants were entitled to a proportional credit. Sanders & Joyce, *supra*, at 268–69.

The comparative responsibility statute, as reformed in 1987, discards the proportional credit provision of the old statute, maintains the dollar setoff provision, and adds a new sliding scale provision.[3] Tex. Civ.Prac. & Rem.Code Ann. § 33.012 (Supp. 1992); Sanders & Joyce, *supra*, at 269.

The comparative responsibility statute states that "the amount of damages" shall be reduced by a credit when the claimant has settled with one or more persons. Tex. Civ.Prac. & Rem.Code Ann. § 33.012(b) (Supp.1992). In contrast, however, the prejudgment interest statute states that prejudgment interest accrues on "the amount of the judgment." Tex.Rev.Civ.Stat.Ann. art. 5069–1.05, § 6(a) (Supp.1992). This Court cannot ignore the legislature's use of the word "judgment," rather than "damages," in the prejudgment interest statute. This Court has stated that "the language in a statute is presumed to have been selected and used with care," and every word is presumed to have been intentionally used

with meaning and purpose. *Railroad Comm'n v. Olin Corp.*, 690 S.W.2d 628, 631 (Tex.App.), *writ ref'd n.r.e.*, 701 S.W.2d 641 (Tex.1985).

The amount of damages in a judgment is obtained by reducing the jury verdict by any percentage of negligence attributable to the plaintiff(s) and then by any settlement credits due the remaining defendant(s). *See* Tex.Civ.Prac. & Rem.Code Ann. § 33.012(a), (b) (Supp.1992). Settlement credits, such as the one due the Hospital, apply "against the amount of the verdict after any reduction in the plaintiff's recovery as a result of the plaintiff's percentage of responsibility." Kirk P. Watson, *Comparative Responsibility Under the New Civil Justice Legislation*, 51 Tex. B.J. 688, 692 (1988).

This issue has already been addressed by the Houston Court of Appeals in *C & H Nationwide, Inc. v. Thompson*, 810 S.W.2d 259, 275 (Tex.App.1991, writ requested). In *C & H Nationwide*, the court of appeals reformed a trial court's judgment ordering prejudgment interest to accrue on the total damages awarded by the jury verdict. *Id.* at 259. The court held that prejudgment interest should accrue on the *"judgment* after deducting the amount of payments made in settlement from the amount of damages found by the jury." *Id.* at 275 (emphasis added). We find this opinion persuasive.

The Hospital argues that the Dunsmoors bargained away their right to prejudgment interest in their settlement agreement with the doctor-defendants. We agree. Settlement agreements should contain both compensation for past and future damages, as well as prejudgment and postjudgment interest on those amounts. Nonsettling parties cannot affect the time frame of settlement agreements and should not be penalized for events they cannot control.

---

3. "Even though the new statute drops the proportional credit provision, it still calls for determination of the settling defendants' percentage of responsibility by the jury. Tex.Civ.Prac. & Rem.Code Ann. § 33.003 (Vernon 1987). Apparently, this is done in order to assess whether

the plaintiff has gone over the 51%–60% threshold barring it from recovery." Sanders & Joyce, *supra*, at 269 n. 253. In addition, the settling defendants' percentage of responsibility helps determine threshold levels for the defendants' potential joint and several liability.

Therefore, we hold that any offsets or credits due the Hospital should be deducted from the total damages awarded in the jury verdict before calculating prejudgment interest on the remaining "judgment amount." Accordingly, the Hospital's points of error one and two are sustained, and the Dunsmoors' single cross-point of error is overruled.

*Points 5 & 6: Valuation of the Settlement Credit*

■ In points of error five and six, the Hospital contends that the district court erred in the credit given it for the settlement between the Dunsmoors and the doctor-defendants. It argues that the district court assigned an incorrect value to the annuity purchased for the Dunsmoors.

During the trial, the Hospital's economic expert witness testified that the present value of the structured settlement with the doctor-defendants was $302,000.00 in cash plus $170,816.00 for the present value of the annuity. The Hospital then attempted to introduce additional evidence concerning the cost of the annuity after the jury had returned its verdict in favor of the Dunsmoors. At the hearing on the Dunsmoors' motion for entry of judgment, the Hospital introduced an affidavit showing the actual cost of the annuity to be $178,516.00, nearly $8,000 more than the present value testimony.

Nonsettling defendants are entitled to a settlement credit for "the sum of the dollar amounts of all settlements." Tex.Civ.Prac. & Rem.Code Ann. § 33.012(b)(1) (Supp. 1992). "[A]ll settlements" include both cash and non-cash settlements. *Id.* Even though the comparative responsibility statute does not specify how non-cash settlements should be valued, the prejudgment interest statute suggests a valuation method. *See* Tex.Rev.Civ.Stat.Ann. art. 5069–1.05, § 6(f) (Supp.1992). Section 6(f) states that prejudgment interest on settlement offers "for other than present cash payment[s]" should be valued "on the basis of cost or fair market value of the settlement offer at the time [the offer] is made." *Id.*

Since the comparative responsibility statute and the prejudgment interest statute were passed during the same legislative session as a part of the 1987 tort reform legislation, the statutes can be read together in order to determine legislative intent. *See Henderson v. State*, 758 S.W.2d 694, 695 (Tex.App.1988, no writ). The valuation method of settlement offers in section 6(f) thus provides a reasonable basis for determining the dollar amount of non-cash consummated settlements for purposes of the comparative responsibility statute. Consequently, the annuity purchased for the Dunsmoors as a part of the settlement agreement with the doctor-defendants should be valued at either the cost or fair market value of the annuity at the time the offer was made.

■ The Hospital argues instead that the value of the annuity for the purposes of the settlement credit should be the sum of all payments which have been or will be received by the Dunsmoors in the future. This valuation method would give the Hospital present credit for funds to be paid in the future and is unsupported by the statutes in question. *See* Tex.Rev.Civ.Stat. Ann. art. 5069–1.05, § 6(f) (Supp.1992); Tex.Civ.Prac. & Rem.Code Ann. § 33.012 (Supp.1992). Furthermore, this method is unworkable since the annuity is for life and the total amount to be paid is uncertain.

Alternatively, the Hospital argues that the value of the annuity should be the actual cost since it represents the actual economic benefit conferred on the plaintiff. While actual cost is one fair and equitable valuation method, it is not the only valuation method. The trial court had the discretion of choosing either the actual cost or the fair market value of the annuity.

From the record before us, it appears that the district court had the sworn testimony of the Hospital's economic expert that the fair market value of the annuity was $170,816.00. In addition, at the hearing on the motion for entry of judgment, the Hospital sought to introduce an affidavit of the actual cost of the annuity. Since one of the two accepted methods of valuation was used for the non-cash portion of the settlement, we need not reach the question as to whether the affidavit was proper

evidence to be considered by the district court. We conclude that the trial court did not err in exercising its discretion to base the final judgment upon the fair market value of the annuity. The Hospital's points of error five and six are overruled.

*Points 7 & 8: Calculation of Post-judgment Interest*

■ In points of error seven and eight, the Hospital contends that the trial court should not have allowed postjudgment interest to accrue on prejudgment interest. The Hospital argues that prejudgment interest should accrue on the judgment, and postjudgment interest should accrue on the same judgment amount, exclusive of accrued prejudgment interest. We disagree.

■ The courts of this state have long held that a judgment for principal and interest may bear interest. *Hagood v. Aikin*, 57 Tex. 511 (1881); *Miner v. Paris Exch. Bank*, 53 Tex. 559 (1880); *Frazier v. Campbell*, 5 Tex. 275 (1849); *Ligon v. E.F. Hutton & Co.*, 428 S.W.2d 434 (Tex.Civ. App.1968, writ ref'd n.r.e.); *International & G.N. R.R. v. Dimmitt County Pasture Co.*, 23 S.W. 754 (Tex.Civ.App.1893, no writ). Prejudgment interest becomes incorporated into and a part of the final judgment rendered by the court, and there is no statutory exception prohibiting interest on the entire final judgment amount. *Coles v. Kelsey*, 13 Tex. 75 (1854). Furthermore, the 1987 tort reform legislation did not alter this long-standing application of postjudgment interest to damages found by the jury and prejudgment interest as determined by the court.

Postjudgment interest is compensation allowed by law for the use or detention of money computed from the date of rendition of judgment until the date of its satisfaction. Tex.Rev.Civ.Stat.Ann. art. 5069–1.05, § 3(a) (1987 & Supp.1992). An inequitable result would occur were we to hold that postjudgment interest does not accrue on the prejudgment interest portion of the final judgment. The Dunsmoors would then not receive compensation for the loss of their use of the prejudgment interest amount from the rendition of judgment until the date of its satisfaction. Further-

more, the Hospital would have no additional incentive to satisfy the prejudgment interest portion of the judgment. The Hospital's points of error seven and eight are hereby overruled.

### MODIFICATION OF THE FINAL JUDGMENT

Based upon our holdings on points of error one through four, the final judgment of the district court is hereby modified. The settlement credit of $472,000.00 shall be deducted from the verdict amount of $703,800.00, for a net monetary judgment amount of $231,800.00. Prejudgment interest shall accrue on that judgment amount at ten percent simple interest per annum from October 14, 1988, to March 13, 1991. The prejudgment interest amount shall then be added to $231,800.00, for a total final judgment amount. Postjudgment interest shall then accrue on this total final judgment amount at the rate of ten percent per annum, compounded annually, from March 14, 1991, to April 12, 1991, when it shall be reduced by the amount of the Hospital's partial payment of $278,768.52. The net difference will continue accruing postjudgment interest until the date actually paid. As so modified, the judgment of the district court is affirmed.