TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00534-CV







Russell Gregory, Appellant




v.




Davis & Davis, P.C., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 94-07348, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING






PER CURIAM

 Russell Gregory appeals from a judgment awarding Davis & Davis, P.C. ("the firm")
damages of $17,085,934.97 based on jury findings that his knowing misrepresentations and deceptions
regarding a deferred compensation plan were a producing cause of damages to the firm. Gregory contends
that there was no evidence or insufficient evidence to support the jury findings of knowing deception,
causation, and damages. He further argues that the trial court erred by refusing to allow post-verdict
evidence of the value of the firm's settlement with other defendants, incorrectly applying the settlement
credit, incorrectly computing prejudgment interest, and miscalculating the award of attorney's fees. We
will modify the judgment and affirm it as modified. (1)


THE PLAN


 Davis & Davis asked Gregory, the firm's longtime insurance agent at Prudential, to change
the retirement plan for its shareholders. Gregory indicated that he did not have the expertise necessary to
handle the transaction alone and suggested the firm call Georgina Gonzalez. No one told the firm that
Gonzalez, who had done actuarial work for the firm, had received and would receive commissions for
Prudential services the firm purchased.

 The firm decided to participate in a plan based on representations made to them in meetings
with Gregory and Gonzalez. Because Gregory did not fully understand the plan's details or the actuarial
subtleties, Gonzalez did most of the explaining. The plan consisted of Prudential whole life insurance
policies on the firm's five shareholders (with the firm as beneficiary), a disability policy on the shareholders,
and $6 million in deferred compensation retirement benefits for the shareholders. These retirement benefits
were represented by Prudential as guaranteed or "certain" in amount. This guarantee of benefits in a sum
certain forms the crux of this entire dispute. The retirement benefits were to be paid monthly for ten years
as each shareholder reached 62 years of age. Firm members thought that Prudential would pay the
retirement benefits to the firm, which would disburse the funds to the retired shareholders. The only written
contracts, however, outlined the life insurance transaction and required the firm to pay the shareholders the
deferred compensation benefits from the accrued cash value of the whole life policies.

 The firm sued upon learning Prudential did not intend to guarantee payment of the
retirement benefits. Just before trial, Prudential agreed to pay the retirement benefits, settling the firm's suit
against Prudential and Gonzales. However, pursuant to the terms of the settlement, 30% of the retirement
benefits were to be paid directly to the firm's attorneys as attorney's fees. The firm proceeded to trial
against Gregory.


VERDICT AND JUDGMENT


 The jury made several findings. In response to Questions 1 and 2, it found that Gregory
knowingly engaged in a false, misleading, unfair, or deceptive act or practice that was a producing cause
of damages to the firm. In response to Question 3(a), the jury found actual damages of $1,767,925--the
difference at the inception of the plan on August 1, 1986 between the value of the deferred compensation
plan as represented by Gregory and the value of the plan the firm received. The jury answered two
attorney's-fees questions--one as a subpart to the damage question (Question 3(b)) and one standing
alone (Question 4). In response to Question 3(b), the jury found that 30% of the $1.7 million would be
a reasonable attorney's fee. In response to Question 4, the jury found that a reasonable attorney's fee
would be 30% of the recovery for trial work, 35% if the case was appealed to this Court, and 40% if the
case was appealed to the supreme court.

 Based on the verdict, the court made the following award in its final judgment:


 Prejudgment interest (8/1/86 - 5/28/96) 2,930,403.84

 TOTAL ACTUAL DAMAGES $4,698,328.84

 Mandatory double damages 9,936,657.68

 TOTAL DAMAGES $14,094,986.52

 Attorney's fees (30% of recovery) 4,228,495.95

 TOTAL AWARD BEFORE CREDIT $18,323,482.47

 Credit for settlement with Prudential and Gonzales (1,237,547.50)

 TOTAL AWARD $17,085,934.97



The court also awarded 10% post-judgment interest on the judgment compounded annually.


DISCUSSION


 Gregory raises a variety of challenges to the judgment, including attacks on state-court
jurisdiction, evidentiary rulings, evidentiary sufficiency, and damage calculations.


1. ERISA preemption

 We begin with Gregory's supplemental point of error charging that the federal Employee
Retirement Income Security Act preempts state-court jurisdiction over this action relating to an employee
benefits plan. See 29 U.S.C. § 1144(a). Claims that are not against ERISA entities (employer, beneficiary,
plan administrator, plan fiduciary) and that do not implicate plan administration of benefits or relations
among the ERISA entities, however, are not preempted. Perkins v. Time Ins. Co., 898 F.2d 470, 473
(5th Cir. 1990). In Perkins, the plaintiff sued an insurance agent for fraudulently inducing him to drop his
medical coverage in favor of an ERISA-covered plan; the court found no preemption. Id. Similarly, we
conclude that the claims that Gregory, an agent, misrepresented the nature of the plan are not preempted. 
His representations did not affect the actual administration of benefits nor did they affect relations among
ERISA entities any more than the agent's representations in Perkins. We overrule the supplemental point
of error. We decline to impose sanctions for frivolous appeal against Gregory for raising this point.


2.  Legal and factual sufficiency of evidence

 Gregory contends by point of error one that the trial court erred by entering judgment on
the jury's award of damages because there is no evidence or, alternatively, insufficient evidence of
damages. The court asked the jury to determine damages as the difference between the value of the
deferred compensation plan the firm received and the value the plan would have had as represented by
Gregory. The jury was instructed to determine the value as of the date that the firm received the plan. The
jury found the difference to be $1,767,925.

 In evaluating a no-evidence point of error, we review the evidence in the light most
favorable to the judgment, considering only evidence and inferences that support the findings, and rejecting
contrary evidence and inferences. Stedman v. Georgetown Sav. & Loan Ass'n, 595 S.W.2d 486, 488
(Tex. 1979). We must uphold the jury's finding if it is supported by more than a scintilla of evidence. Id. 
In reviewing a factual sufficiency point, we review all the evidence and can reverse only if we determine that
the evidence supporting the jury's verdict is so weak as to make the verdict clearly wrong and the judgment
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 The jury took its damage figure directly from testimony by the firm's expert, independent
economic consultant Dr. George Berry. Berry based his calculations on assumptions that the firm
understood that Prudential guaranteed to supply the firm with the $6 million in retirement payments and that
the plan actually received was valueless because, in fact, nothing was guaranteed. Berry testified that the
difference in value between the plan as represented and the plan as delivered was therefore the funding cost
of the represented plan at its inception. He then determined that the present value in 1986 of the $6 million
in deferred periodic payments was $1,767,925 (assuming a 6% after-tax return on funds invested in 1986). 
According to Berry, this amount was the cost necessary to fund the annuity payments as represented.

 Gregory complains that the evidence does not support the view that the deferred
compensation plan was completely separate from the life insurance policies and valueless. He points to
testimony by firm principals showing their understanding that funding for the deferred compensation
payments would be related somehow to the life insurance policies. He also points to testimony by firm
witnesses acknowledging that the insurance policies had a cash value of about $500,000 at the time of trial
apart from the $3 million face value of the life insurance policies.

 Other testimony, however, supports the jury's finding. The Davises testified that they
understood that Prudential was responsible for the deferred compensation payments. Fred Davis testified
that the firm would not have bought the plan had the members understood that the retirement benefits were
not guaranteed. Though Prudential denied that it guaranteed payment of the retirement benefits, Gregory
testified he could see how the chart listing "retirement benefits certain" could be interpreted as implying that
Prudential guaranteed the payment of the retirement benefits. Prudential's own figures established that the
life insurance policies alone were, at the time of trial, actuarially incapable of funding more than
approximately two years of retirement payments.

 The jury apparently reconciled the conflicting evidence by focusing on the missing
guarantee. The jury must have accepted the idea that the firm understood that the premiums funded the
life and disability insurance policies and also obligated Prudential to supply retirement compensation. The
absence of the guarantee is admitted and is the essence of the complaint; the value that the policies actually
produced, corporate tax-rate changes, and the firm's cashing-in of policies on departed shareholders are
irrelevant to whether there was a guarantee promised and not delivered. Sufficient evidence supports the
view that the firm believed it was guaranteed $6 million in retirement benefits, but was actually guaranteed
nothing. The damage model accounts for this discrepancy between the plan as represented and the plan
as delivered. We overrule point one.

 By point of error two, Gregory contends that there is no evidence or insufficient evidence
to support the jury's finding that he engaged in a false, misleading, unfair, or deceptive act or practice that
was a producing cause of the damages. The proscribed acts listed in the jury instruction include the
following:


(b) Making, circulating and causing to be made directly or indirectly, any statement
containing representations with respect to the business of insurance which are untrue,
deceptive or misleading; or


(c) Making a misrepresentation relating to insurance. "Misrepresentation" means any of
the following:


(1) any untrue statement of a material fact; or


(2) any failure to state a material fact that is necessary to prevent the statements made
from being misleading, when these statements are considered in the light of the
circumstances under which they are made; or 


(3) the making of any statement in such a manner or order as to mislead a reasonably
prudent person to a false conclusion of a material fact; or,


(d) Using words or phrases which are misleading or deceptive because their
meaning is not clear, or is clear only to persons familiar with insurance
terminology; or


(e) Representing that the deferred compensation plan had characteristics or
benefits which it did not have.



The court defined producing cause as "an efficient, exciting, or contributing cause, that, in a natural
sequence, produced the damages, if any. There may be more than one producing cause."

 Gregory argues that he did not make any affirmative representations regarding the plan. 
However, Gregory testified that he knew in 1986 at the time of the presentation that the firm, and not
Prudential, would be the source of the funds used to pay the total retirement benefits certain.

 Further, Gregory participated in actions that led the Davises to conclude that Prudential
would guarantee the retirement benefits. The Davises testified that they made it clear to Gregory that they
wanted a plan that provided retirement benefits in a way that the firm would not have to worry about paying
the money. Gregory provided Gonzalez with information about the potential participants in the plan. He
sent the firm Gonzalez's figures on the deferred compensation plan with a note saying, "They just look
great!" He participated in the meeting at which Gonzalez and the Davises discussed those figures. Gregory
admitted he did not contradict any representations made in that meeting. His handwriting appears on the
summary of benefits page containing the "retirement benefit certain" language that convinced the Davises
that the plan provided life and disability insurance in addition to retirement payments certain to be paid by
Prudential. Dean Davis described Gregory as affirming, nodding, and agreeing with Gonzalez's description
of the plan. Fred Davis testified that the firm bought the plan because of the representations that the
benefits were certain. He testified that they would not have bought the plan had they understood that the
funds for the retirement benefits were to come from the firm rather than Prudential. We find legally and
factually sufficient evidence to support the jury's finding that Gregory's actions fit at least one of the above-quoted proscribed acts which caused the firm to buy a plan that it would not have otherwise bought. We
overrule point two.

 Gregory contends by point of error three that there is no evidence or insufficient evidence
to support the jury finding that any misrepresentations were made knowingly. The court defined knowingly
as "actual awareness of the falsity, deception, or unfairness of the conduct in question. Actual awareness
may be inferred where objective manifestations indicate that a person acted with actual awareness." The
Davises testified that they told Gregory and Gonzalez that they wanted Prudential to be the source of the
$6 million in retirement benefits certain. Gregory participated in making the representations that Prudential
was satisfying the Davises' desires and that the benefits were "certain," but testified that he knew at the time
of the presentation that the firm, not Prudential, would be the source of the $6 million in retirement benefits. 
Though Gregory testified he first learned in 1994 that the plan did not match the firm's expectations, the
jury was entitled to disbelieve his testimony. Legally and factually sufficient evidence supports the jury's
imputation of a knowing misrepresentation. We overrule point three.


3.  Settlement Credit

 Gregory contends that the trial court erroneously refused to admit evidence regarding the
value of the settlement. He argues by point of error seven that the court should have reopened the record
after the verdict to let him present deposition excerpts to show the value of the firm's settlement with
Prudential and Gonzales. He contends alternatively by point of error eight that the court should have
continued the case or abated entry of judgment so Gregory could review the written settlement agreement
and put on evidence about it. We review these decisions for abuse of discretion. Binford v. Snyder, 189
S.W.2d 471, 476 (Tex. 1945) (reopening); Apresa v. Montfort Ins. Co., 932 S.W.2d 246, 249-50 (Tex.
App.--El Paso 1996, no writ) (reopening); Williamson v. Tucker, 615 S.W.2d 881, 886 (Tex. Civ.
App.--Dallas 1981, writ ref'd n.r.e.) (stay)

 During trial, before giving the charge to the jury, the trial court explicitly gave Gregory the
chance to get something in the record to show what credits Gregory contended he was entitled to on any
judgment or verdict that might be rendered against him. Gregory then offered a copy of the letter agreement
concerning the settlement and the "prove-up" transcript of the settlement hearing, but nothing concerning
the 1996 value of the settlement. After the jury verdict, Gregory tried to offer excerpts from the deposition
of the firm's expert to show that the 1996 value was $2.9 million, but the court would not reopen the
evidence; the court credited Gregory with the 1986 value of $1.2 million instead of the $2.9 million 1996
value.

 Gregory has not shown that a court error unfairly prevented him from presenting the
evidence of the 1996 value of the settlement. Gregory argues that, because courts determine the manner
and effect of settlement credit after the jury fixes liability, the trial court should have allowed him to prove
the 1996 value of the settlement amount after the jury returned its verdict, citing Hamra v. Gulden, 898
S.W.2d 16, 19 (Tex. App.--Dallas 1995, writ dism'd w.o.j.). Just because the application of the credit
occurs after the verdict, however, does not mean that the evidence must be offered then. Though we
decline to speculate whether a court might allow proof after trial, we certainly find no absolute
requirement that a court reopen the evidence to allow proof then. The trial court plainly gave Gregory the
chance to present evidence before it sent the charge to the jury. Gregory did not offer during his
presentation of evidence at trial the deposition excerpts providing evidence of the 1996 value of the
settlement even though they existed during trial. We therefore find no abuse of discretion in the trial court's
refusal to reopen the evidence or stay the judgment. We overrule points seven and eight.

 Both parties complain about the application of the settlement credit in the final judgment. 
The court granted a settlement credit equal to the 1986 present value of the retirement plan as understood
by the firm (roughly $1.7 million), less 30% to account for attorney's fees. By point of error six, Gregory
contends that the trial court did not properly apply the appropriate credit. By a crosspoint of error, the firm
contends that the trial court erred by applying any settlement credit at all.

 The firm argues that Gregory should not be allowed a settlement credit because he pleaded
for it under the wrong statute. Gregory requested setoff for the settlement, relying "specifically and
affirmatively" on Texas Civil Practice and Remedies Code Chapter 33. He elected to take a credit in the
form of a dollar-for-dollar credit. Because the firm did not object or except to this aspect of the petition,
we must read the petition liberally. See Roark v. Allen, 633 S.W.2d 804, 809-10 (Tex. 1982). 
Regardless of the applicability of Chapter 33, we will not read the pleading to prohibit Gregory from
obtaining credit for settlement on other authority. The firm does not argue that there is no legal basis to
apply a credit. We conclude that the pleading provided sufficient notice to support a settlement credit.

 The firm also argues that Gregory should not be allowed a credit because he failed to
introduce evidence of the value of the settlement at the time of offer, citing Sisters of Charity of the
Incarnate Word v. Dunsmoor, 832 S.W.2d 112, 118 (Tex. App.--Austin 1992, writ denied). In that
case, this Court applied a credit for the present value of a series of future cash payments rather than for the
arithmetic sum of the future payments. Id. This Court did not say, however, that an earlier present value
could not be used when the current present value is not available. In mildly inflationary times such as the
period from 1986 to 1996, a past present value of $6 million is smaller than the current present value of
the same $6 million. The settlement offer therefore was at least as valuable in 1996 as it was in 1986; the
1986 value thus was some evidence of its 1996 value. (According to evidence that Gregory urges the trial
court should have allowed, the present value of the firm's settlement in 1996 was $2.9 million, nearly twice
the $1.7 million 1986 value on which the trial court based its settlement credit.) The firm was not harmed
by the application of a smaller settlement credit. We overrule the crosspoint.

 At the other extreme, Gregory argues he should have gotten credit for the full $6 million
value of the settlement. As noted above, this Court has rejected the argument that courts should grant
credit for the total sum of future cash payments. Sisters of Charity, 832 S.W.2d at 118. Because the
settlement includes payments in the future, allowing credit today on the full amount of future payments
would vastly overstate the present value of the settlement.

 Though Gregory correctly argues that he should get credit for the 1996 present value of
the settlement, he did not introduce evidence of that value. We cannot say that the trial court erred by
basing its settlement credit upon the only evidence of the settlement value in the record.

 Gregory also contends that the trial court erred by reducing the settlement credit to exclude
the portion of the settlement accorded to attorney's fees. The courts apply settlement credits to prevent
parties from obtaining double recoveries for a single injury, one against the settling defendant and one
against the non-settling defendant; to get credit for a settlement, a non-settling defendant must prove that
the injured party suffered an indivisible injury and that the settlement remedies the same injury for which the
non-settling defendant is found liable. First Title Co. v. Garrett, 860 S.W.2d 74, 78-79 (Tex. 1993);
see also Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 5 (Tex. 1991). The settlement by
Prudential and Gonzalez unquestionably was meant to remedy the same injury for which Gregory was found
liable. Gregory also conceded, however, that the settlement did not make the firm whole because it did
not compensate the firm for both its full damages and its attorney's fees. The portion of the settlement
amount earmarked for attorney's fees was thus correctly carved out of the settlement credit, and only the
portion of the settlement allotted to the damage award was credited against the jury's damage finding.

 But there is merit to Gregory's insistence that any amounts the firm received to compensate
it for attorney's fees should be credited against the total award. The supreme court's sentiment that injured
parties who settle should gain only one recovery extends to the recovery of attorney's fees. See Stewart
Title, 822 S.W.2d at 5 (plaintiff must segregate fees owed by settling defendants so that non-settling
defendants are not charged fees for which they are not responsible). Applied to a case with unsegregated
damages and attorney's fees figured as a percentage of the settlement and recovery, the one-satisfaction
rule requires that the portion of the settlement dedicated to attorney's fees should offset the attorney's fees
awarded at trial. In this final judgment, however, the trial court allowed the firm both to have attorney's
fees figured on the full damage award before the settlement credit and to keep the portion of the settlement
earmarked for attorney's fees. This erroneously allowed the firm a double recovery of the attorney's fees
attributable to the settlement amount. To the extent that we find the trial court erred by not applying the
attorney's fees portion of the settlement as a credit, we sustain point six. We overrule it in all other respects
discussed.

 The remaining portion of point of error six deals with prejudgment interest, as do points of
error four and five. Gregory contends that the court erred by awarding prejudgment interest on future
damages from the date of the transaction, by trebling the prejudgment interest, and by figuring prejudgment
interest only after the settlement credit was deducted. The theme underlying all of these assertions is the
inequity of the application of prejudgment interest.

 We conclude that the unique facts of this case make application of prejudgment interest
inequitable. The parties agree that prejudgment interest is applicable in this case only under equitable
principles. Courts apply equitable prejudgment interest to alleviate the burden on the injured party of being
deprived of the damage amounts from the time of injury through judgment. Cavnar v. Quality Control
Parking, Inc., 696 S.W.2d 549, 552 (Tex. 1985); see also Perry Roofing Co. v. Alcott, 744 S.W.2d
929, 930-31 (Tex. 1988). In this case, the firm had been deprived of nothing tangible at the time of trial. 
No retirement payments were due and the plan fund had a balance that, with premiums to be paid, could
have covered two years of retirement benefits. The trial court also knew at the time of trial that no
retirement payments would be missed because Prudential promised as part of the settlement to make all
of the retirement payments. Compared to what the firm members understood in 1986 they would get, all
they lacked after the settlement was the portion of the settlement allotted to attorney's fees. (2) Gregory's
failure to prove the 1996 value of the settlement further tipped the scales against the equity of augmenting
the damages. Though the failure of proof was not the firm's fault, this failure caused the settlement credit
to be discounted to 1986 dollars and therefore undervalued. The application of the equitable prejudgment
interest rate itself worked an inequity because it inflated the damages; the court computed the damages as
of 1986 by discounting the future payments at 6% after-tax, but the prejudgment interest, designed to
supply lost time-value of money, overcompensated by adding 10% compounded daily onto the value. We
conclude that the trial court erred by applying equitable prejudgment interest where it was inequitable to
do so, and we sustain generally the points of error addressing prejudgment interest.

 By his ninth point of error, Gregory contends that the trial court erred in its computation
of attorney's fees. He contends that the court should have awarded 30% of the actual damages without
prejudgment interest or doubling, based on the jury's response to Question 3(b). His argument ignores the
basis of the court's award, Question 4. In response to that question, the jury found that the firm should
receive 30% of the recovery (not just the actual damages found in Question 3(a)) as attorney's fees. We
conclude that the court applied the percentage at the proper stage of damage calculation, and so overrule
point nine to that extent. We sustain point nine to the extent that the attorney's fees award must be
recalculated because of the elimination of prejudgment interest and the crediting of that portion of the
settlement agreement devoted to attorney's fees.


SUMMARY


 We leave intact the actual damage award of $1,767,925. The elimination of prejudgment
interest requires us to recompute the mandatory double damages; that modified award is $3,535,850. The
attorney's fees, at 30% of the recovery, must be recalculated on the new sum. We must then apply the
credit for the settlement--including the portion of the settlement earmarked for attorney's fees--to avoid
allowing a double recovery. The revised calculations are as follows:


 Actual damages $1,767,925.00

 Mandatory double damages 3,535,850.00

 TOTAL DAMAGES $5,303,775.00

 Attorney's fees (30% of recovery) 1,591,132.50

 TOTAL AWARD BEFORE CREDIT $6,894,907.50

 Credit for damage settlement (1,237,547.50)

 Credit for settlement atty's fees (530,377.50)

 TOTAL AWARD $5,126,982.50



 We deny the firm's motion for sanctions against Gregory for raising the ERISA argument. 
We affirm the judgment as modified.


Before Chief Justice Carroll, Justices Jones and Kidd

Modified and, as Modified, Affirmed

Filed: January 8, 1998

Do Not Publish

1.   We overrule the motion to resubmit this case on oral argument.
2. There was also a dispute at trial as to whether the retirement benefits would begin at age 62 or
age 65. The original proposals by Prudential had used age 62, while the final paperwork as well as the
pretrial settlement with Prudential and Gonzalez used age 65.


 the
inequity of the application of prejudgment interest.

 We conclude that the unique facts of this case make application of prejudgment interest
inequitable. The parties agree that prejudgment interest is applicable in this case only under equitable
principles. Courts apply equitable prejudgment interest to alleviate the burden on the injured party of being
deprived of the damage amounts from the time of injury through judgment. Cavnar v. Quality Control
Parking, Inc., 696 S.W.2d 549, 552 (Tex. 1985); see also Perry Roofing Co. v. Alcott, 744 S.W.2d
929, 930-31 (Tex. 1988). In this case, the firm had been deprived of nothing tangible at the time of trial. 
No retirement payments were due and the plan fund had a balance that, with premiums to be paid, could
have covered two years of retirement benefits. The trial court also knew at the time of trial that no
retirement payments would be missed because Prudential promised as part of the settlement to make all
of the retirement payments. Compared to what the firm members understood in 1986 they would get, all
they lacked after the settlement was the portion of the settlement allotted to attorney's fees. (2) Gregory's
failure to prove the 1996 value of the settlement further tipped the scales against the equity of augmenting
the damages. Though the failure of proof was not the firm's fault, this failure caused the settlement credit
to be discounted to 1986 dollars and therefore undervalued. The application of the equitable prejudgment
interest rate itself worked an inequity because it inflated the damages; the court computed the damages as
of 1986 by discounting the future payments at 6% after-tax, but the prejudgment interest, designed to
supply lost time-value of money, overcompensated by adding 10% compounded daily onto the value. We
conclude that the trial court erred by applying equitable prejudgment interest where it was inequitable to
do so, and we sustain generally the points of error addressing prejudgment interest.

 By his ninth point of error, Gregory contends that the trial court erred in its computation
of attorney's fees. He contends that the court should have awarded 30% of the actual damages without
prejudgment interest or doubling, based on the jury's response to Question 3(b). His argument ignores the
basis of the court's award, Question 4. In response to that question, the jury found that the firm should
receive 30% of the recovery (not just the actual damages found in Question 3(a)) as attorney's fees. We
conclude that the court applied the percentage at the proper stage of damage calculation, and so overrule
point nine to that extent. We sustain point nine to the extent that the attorney's fees award must be
recalculated because of the elimination of prejudgment interest and the crediting of