TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00456-CV






Billie J. Navarra, Appellant




v.




James M. Landeen, M.D., Appellee







FROM THE DISTRICT COURT OF BEXAR COUNTY, 166TH JUDICIAL DISTRICT


NO. 94-CI-17501, HONORABLE HENRY J. STRAUSS, JUDGE PRESIDING







 Billie J. Navarra appeals from a take-nothing judgment rendered against her. The
tortuous procedural history of this case includes a purported no-answer default judgment rendered
after an answer was filed, withdrawal of the same default judgment after a year of inactivity, and
finally a trial on the merits in which the plaintiff declined to produce evidence. Nevertheless, this
appeal turns on a single issue. Because the trial court could reasonably decide based upon this
record that the default judgment was interlocutory, we will affirm.


BACKGROUND


 On December 9, 1994, Navarra filed a medical malpractice action against James
M. Landeen, M.D. Service was executed on Landeen on January 3, 1995. His answer, due
twenty days after the next Monday, was due January 30, 1995. Landeen sent a letter and a pro
se answer dated January 30, 1995. The answer, which bears a file-mark of February 1, 1995
from the district clerk, apparently was not in the file in the trial judge's possession at the default-judgment hearing on February 2, 1995. At that hearing, Navarra testified that Landeen's
malpractice caused her $3,285,000 in damages. Judge John Gabriel rendered a default judgment
in her favor in that amount. The default judgment did not contain a Mother-Hubbard clause. An
abstract of judgment was issued on March 28, 1995.

 In 1996, Landeen, represented by counsel, filed his motion to set aside default
judgment, application for equitable bill of review, and judgment nunc pro tunc. Navarra
responded with a motion to dismiss for lack of jurisdiction. After a hearing, Judge Gabriel denied
(rather than dismissed) Landeen's motion on March 14, 1996, concluding that the default
judgment was final and that the court had no jurisdiction to consider the motion. The court then
granted the motion to dismiss.

 Landeen then filed a motion for new trial on March 22, 1996. Less than two weeks
later, Judge Gabriel informed counsel that he had reconsidered and decided that the default
judgment was interlocutory and erroneously granted. By order signed April 18, 1996, the court
set aside the 1996 dismissal, the 1995 default judgment, and the 1995 writ of execution.

 Navarra's then attacked the court's actions. She filed a motion for leave to file
petition for writ of mandamus in the court of appeals asserting that the default judgment was final,
that the time to appeal it had passed, and that the trial court accordingly lacked jurisdiction to set
it aside. The court of appeals denied Navarra leave to file. She then moved to the trial court to
dismiss the suit for want of jurisdiction; Judge Henry J. Strauss denied that motion.

 The suit was set for trial on May 5, 1997. Navarra appeared and presented a plea
to the jurisdiction. After the court denied her plea, she declined to present evidence at trial. The
district court, Judge Henry J. Strauss presiding, accordingly rendered a take-nothing judgment
against her on May 9, 1997. Not only was this post-trial judgment entitled to the Aldridge
presumption of finality, (1) it closed with a Mother-Hubbard clause denying all relief not granted.


PENDING MOTIONS


 Landeen contends we should strike or disregard some elements of the record. He
complains that one document bears an incorrect filing date and that some others do not bear any
file marks. He argues that we should not consider the abstract of judgment because it was not on
file at the time of the rendition of the default judgment, the setting aside of the default judgment,
or the rendition of final judgment after the trial. Navarra contends the abstract, filed in March
1995, is properly part of the appellate record because the abstract was in the record on March 14,
1996 when the trial court took judicial notice of the record when denying the motion to set aside
the default judgment. We decline to strike any of the record.

 Landeen also renews his request for oral argument. Because we can resolve the
appeal based on the briefs and record at hand, we deny the motion for oral argument.


DISCUSSION


 Navarra bases her four points of error on her contention that, after the February
1995 default judgment, the court lacked jurisdiction to act in 1996 or 1997. By point of error
three, she contends the trial court had no jurisdiction to allow multiple untimely motions for new
trial. She contends by point one that the court erred by setting aside the default judgment because
there was no evidence or insufficient evidence either (1) to show that its March 14, 1996 order
refusing to set aside the default was improvidently granted or (2) to justify the findings set out in
its order granting the new trial. She contends by points of error two and four that the trial court
erred by holding it had jurisdiction both to grant a new trial and to render a take-nothing judgment
after the case was called for a subsequent trial on the merits. Resolution of Navarra's contentions
that the trial court lacked jurisdiction requires deciding whether the February 2, 1995 default
judgment was final.

 Default judgments are not presumed to be final. Houston Health Clubs, Inc. v.
First Court of Appeals, 722 S.W.2d 692, 693 (Tex. 1986) (default judgment not addressing
punitive-damage claim was not final). Execution language does not make an interlocutory
judgment final. Rosedale Partners, Ltd. v. 131st Judicial Dist. Court, Bexar County, 869 S.W.2d
643, 647 (Tex. App.--San Antonio 1994, orig. proceeding) (phrase "for all which let execution
issue" did not make final a judgment that did not dispose of claims for prejudgment interest and
attorney's fees). When assessing the finality of a judgment, we look at the court's intent "as
gleaned from the language of the decree, the record as a whole, and the conduct of the parties." 
Id. at 646. Appellate timetables do not begin to run when a nonappealable interlocutory judgment
is signed. See Hunt Oil Co. v. Moore, 639 S.W.2d 459, 460 (Tex. 1982) (summary judgment
ordering accounting and not addressing prejudgment-interest claim was interlocutory). A court
rendering an interlocutory default judgment retains jurisdiction to set the judgment aside and order
a new trial. Houston Health Clubs, 722 S.W.2d at 694.

 The trial court held the February 2, 1995 default judgment was interlocutory. 
Navarra demanded prejudgment interest in her original petition. The default judgment does not
mention prejudgment interest. There is no Mother-Hubbard clause or other language disposing
of all claims not expressly adjudicated. Navarra contends that she waived her claim for
prejudgment interest, but there is no evidence of that in the record. Though Navarra acted as if
the judgment were final by obtaining an abstract of the judgment, she did not attempt to execute;
Landeen's conduct in seeking to set aside the judgment is clearly inconsistent with a belief that
the default judgment was final. The claim for prejudgment interest remained pending. The same
trial judge who granted the default judgment later determined that the default judgment was not
final, but interlocutory. Based upon this record, we are unable to conclude otherwise.

 Navarra contends that the judgment was final because the award of prejudgment
interest was merely ministerial, citing Zamarripa v. Sifuentes, 929 S.W.2d 655, 657 (Tex.
App.--San Antonio 1996, no writ). For a judgment to be ministerial, a ministerial officer must be
able to execute the judgment without ascertainment of additional facts. H.E. Butt Grocery Co.
v. Bay, Inc., 808 S.W.2d 678, 680 (Tex. App.--Corpus Christi 1991, writ denied). A critical fact
missing here is the inception date for prejudgment interest. The parties essentially agree that
prejudgment interest runs from the earlier of the date suit is filed or the 180th day after the
defendant receives notice of the claim. See Sisters of Charity v. Dunsmoor, 832 S.W.2d 112, 115
(Tex. App.--Austin 1992, writ denied). Setting aside the issue of whether Navarra proved Landeen
received her notice of claim, we conclude that neither the judgment nor the default-judgment
hearing record contained information regarding either when prejudgment interest should begin
running or when the defendant received notice. Navarra cites several places in the record that
contain a letter purporting to be the notice-of-claim letter to Landeen, but none of these were filed
when the default judgment was rendered; the letter first appears attached to Navarra's motion to
dismiss, filed February 21, 1996, more than a year after the default judgment was signed. The
missing information made the calculation of prejudgment interest non-ministerial. Navarra
therefore cannot show finality through ministeriality. See Zamarripa, 929 S.W.2d at 657.

 Because we do not reverse the trial court's decision that the default judgment was
interlocutory, we cannot reverse the other challenged rulings. The interlocutory default judgment
did not trigger the running of the time limits for filing a motion for new trial and perfecting an
appeal. The trial court accordingly had jurisdiction to accept and consider Landeen's motions to
reconsider or for new trial. The trial court's contrary decision on March 14, 1996 that it had no
jurisdiction did not strip it of the ability to reconsider that decision. The trial court would have
lacked jurisdiction to consider (and reconsider) Landeen's 1996 motions only if the 1995 default
judgment were final; because it was not, the trial court had jurisdiction to consider the motions. 
Even if we consider the court's March 1996 conclusion that it had no plenary power an implicit
final judgment, the motions to reconsider and for new trial and the court's April 1996 order
withdrawing the earlier orders were well within the procedural time limits of Texas Rules of Civil
Procedure 306a and 329b for reconsideration of a final judgment. (2)

 Navarra complains that, while withdrawing its March 1996 order, the trial court
impermissibly determined its own rules as to its jurisdiction. In the cases she cites, however, trial
courts acted beyond their plenary power following a final judgment. See Metro Dairy Queen
Stores v. Dominguez, 883 S.W.2d 322, 325 (Tex. App.--El Paso 1994, no writ); Carrera v.
Marsh, 847 S.W.2d 337, 342-43 (Tex. App.--El Paso 1993, no writ). The El Paso court held that
neither it nor the trial courts could redefine procedural time limits so as to assume power that had
expired. Metro, 883 S.W.2d at 325; Carrera, 847 S.W.2d at 342-33. The cited cases do not
control because the defaulted defendants in those cases did not show that the judgment was
interlocutory for failure to dispose of all requested relief. In this case, the trial court's decisions
that its judgment was interlocutory and that it had jurisdiction were within the rules of procedure.

 The trial court did not abuse its discretion by reconsidering its denial of the motion
to set aside the default judgment. The default judgment, rendered after an answer was on file with
the clerk, was erroneous. See Davis v. Jefferies, 764 S.W.2d 559, 560 (Tex. 1989). The facts
of Davis were strikingly similar:


On September 22 a hearing for default judgment was requested by Davis. At
11:10 a.m. on September 23, Airborne Express Courier Service delivered to the
Nueces County District Clerk's Office Jefferies' Motion to Transfer Venue and an
Answer. Later that afternoon at 1:30 p.m. a no-answer default judgment was
rendered against Jefferies by the trial court. The trial judge was unaware,
however, that an answer had been filed with the clerk's office earlier that same
day.


. . .



In this case the default judgment rendered by the trial court was erroneous. A
default judgment may not be rendered after the defendant has filed an answer.



Id. at 559-60. The trial court here had sufficient evidence to make the similar findings necessary
to determine that it should set aside the judgment. We review the decision to set aside a default
judgment for an abuse of discretion. Craddock v. Sunshine Bus Lines, 133 S.W.2d 124, 126
(Tex. 1939). The record showed that the grant of the default judgment was based on the belief
that Landeen had not filed an answer. The record at the time of the motion for reconsideration
showed, however, that belief was mistaken because the district clerk's office had file-stamped
Landeen's answer the day before the default-judgment hearing. Even though the trial court and
plaintiff at the default-judgment hearing were unaware of the filing of Landeen's answer, the filing
of his answer makes the subsequent rendition of the no-answer default judgment erroneous. See
Davis, 764 S.W.2d at 559-60. The trial court had sufficient evidence and did not abuse its
discretion by reversing a clearly erroneous judgment.

 Because the trial court had jurisdiction and sufficient evidence to support its
withdrawal of the erroneous default judgment, the trial court had jurisdiction to hold the trial on
the merits. Navarra's refusal to present evidence in support of her claim at the trial on the merits
left the court no option but to render a take-nothing judgment against her.


CONCLUSION


 We overrule all points of error. We affirm the judgment of the trial court.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Carroll not participating

Affirmed

Filed: July 16, 1998

Do Not Publish

1. See North E. Indep. Sch. Dist. v. Aldridge, 400 S.W.2d 893, 897-98 (Tex. 1966).
2. We recognize that this may create some concern among litigants involved with default
judgments. Winners by default may worry that they will never be secure in their judgment
because defaulted defendants will be able to use a finality challenge many years after judgment. 
The solution is this: Ensure that the judgment either expressly disposes of all requested relief or
contains a Mother-Hubbard clause.


order
withdrawing the earlier orders were well within the procedural time limits of Texas Rules of Civil
Procedure 306a and 329b for reconsideration of a final judgment. (2)

 Navarra complains that, while withdrawing its March 1996 order, the trial court
impermissibly determined its own rules as to its jurisdiction. In the cases she cites, however, trial
courts acted beyond their plenary power following a final judgment. See Metro Dairy Queen
Stores v. Dominguez, 883 S.W.2d 322, 325 (Tex. App.--El Paso 1994, no writ); Carrera v.
Marsh, 847 S.W.2d 337, 342-43 (Tex. App.--El Paso 1993, no writ). The El Paso court held that
neither it nor the trial courts could redefine procedural time limits so as to assume power that had
expired. Metro, 883 S.W.2d at 325; Carrera, 847 S.W.2d at 342-33. The cited cases do not
control because the defaulted defendants in those cases did not show that the judgment was
interlocutory for failure to dispose of all requested relief. In this case, the trial court's decisions
that its judgment was interlocutory and that it had jurisdiction were within the rules of procedure.

 The trial court did not abuse its discretion by reconsidering its denial of the motion
to set aside the default judgment. The default judgment, rendered after an answer was on file with
the clerk, was erroneous. See Davis v. Jefferies, 764 S.W.2d 559, 560 (Tex. 1989). The facts
of Davis were strikingly similar:


On September 22 a hearing for default judgment was requested by Davis. At
11:10 a.m. on September 23, Airborne Express Courier Service delivered to the
Nueces County District Clerk's Office Jefferies' Motion to Transfer Venue and an
Answer. Later that afternoon at 1:30 p.m. a no-answer default judgment was
rendered against Jefferies by the trial court. The trial judge was unaware,
however, that an answer had been filed with the clerk's office earlier that same
day.


. . .



In this case the default judgment rendered by the trial court was erroneous. A
default judgment may not be rendered after the defendant has filed an answer.



Id. at 559-60. The trial court here had sufficient evidence to make the similar findings necessary
to determine that it should set aside the judgment. We review the decision to set aside a default
judgment for an abuse of discretion. Craddock v. Sunshine Bus Lines, 133 S.W.2d 124, 126
(Tex. 1939). The record showed that the grant of the default judgment was based on the belief
that Landeen had not filed an answer. The record at the time of the motion for reconsideration
showed, however, that belief was mistaken because the district clerk's office had file-stamped
Landeen's answer the day before the default-judgment hearing. Even though the trial court and
plaintiff at the default-judgment hearing were unaware of the filing of Landeen's answer, the filing
of his answer makes the subsequent rendition of the no-an