**Ronny DEATON, Barbara Deaton, Nelda Doss, Bob Blalock and Carolyn Peterson, Appellants,**

v.

**UNITED MOBILE NETWORKS, L.P., Appellee.**

No. 06–97–00060–CV.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 12, 1998.

Decided March 26, 1998.

Opinion Overruling Rehearing May 5, 1998.

John R. Mercy, Atchley, Russell, Waldrop, Texarkana, W. Bruce Monning, Monning & Waynne, L.L.P., Dallas, for Appellants.

Larry Powers, Powers & Blount, Sulphur Springs, for Appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

The question in this appeal is whether Ronny Deaton has to pay attorney's fees to United Mobile Networks, L.P. (UMN). Ronny Deaton filed a request for declaratory relief asking the trial court to declare a judgment lien invalid and to remove that lien as a cloud on his title to property. The trial court denied the relief sought.

This appeal stems from a case that was decided by this court on July 18, 1996, published at 926 S.W.2d 756 (Tex.App.-Texarkana 1996), and affirmed in part and reversed in part by the Supreme Court at 939 S.W.2d 146 (Tex.1997). In summary, Ronny Deaton worked for UMN as a salesman. He left, and UMN contended he took their customer list with him. A noncompetition agreement was in place between Ronny Deaton and UMN, and UMN sought a declaratory judgment enforcing the agreement and damages on multiple grounds. UMN won at trial. On appeal to this court, we affirmed the declaratory judgment reforming the noncompetition agreement but deleted the damage award, dissolved the judgment enjoining Barbara Deaton, reversed the damage award against her and deleted an award of attorney's fees against her, found the evidence factually insufficient to support UMN's con-

version claim against Ronny Deaton, and severed the latter claim and remanded that portion of the case for a new trial.

The Supreme Court disagreed with this court's conclusion that there was insufficient evidence to support damages for conversion, holding that there was no competent evidence of damages. Thus, the Court concluded that the severance and remand for a new trial was error, reversed the court of appeals' judgment in part, and rendered judgment that UMN take nothing against the Deatons. Otherwise, the Supreme Court affirmed the court of appeals' judgment. 939 S.W.2d at 148.

Thereafter, UMN declined to release a judgment lien taken against Ronny Deaton for $30,000, the amount of attorney's fees awarded by the trial court. UMN contends that the lien is proper because the attorney's fees award is intact because Ronny Deaton never appealed the award of attorney's fees against him personally, and the declaratory judgment against him remains intact. Thus, UMN contends that it prevailed on that part of the case and the fee award should therefore stand.

In the matter before us, the Deatons asked the trial court to declare that since there were no damages to support an Abstract of Judgment to declare that the abstract did not cloud title to realty owned by them.[1] In order to obtain the relief, they asked the court to conclude that the one final judgment in the case was that of the Supreme Court, and since no damages remained to be awarded, the award of attorney's fees was necessarily without basis and was no longer valid.

The initial question that must be answered by this court is whether, when the Supreme Court said that UMN should "take nothing against the Deatons," the Supreme Court actually meant that UMN should take nothing. The "take-nothing" language found in

1. Suit was brought in the name of Ronny Deaton, Barbara Deaton, and a host of Barbara Deaton's relatives. Apparently there was some realty owned by Barbara Deaton and her relatives which they were attempting to sell. The judgment lien provided a cloud on their title to the property, and they filed suit in an attempt to clear title. It is apparent, however, that before

suit was filed, in response to communications between the parties, UMN amended the lien and released Barbara, and also changed the damages against Ronny Deaton from the original $600,-000 judgment, plus attorney's fees, plus costs to reflect a lien only for the $30,000 attorney's fees awarded to them against Ronny Deaton.

the opinion is also in the Supreme Court's judgment and in its mandate.[2]

■ In *Continental Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 277 (Tex.1996), the Court reviewed a judgment of a court of appeals, in which the judgment stating that the trial court's judgment should be in all things reversed was inconsistent with its opinion, which reversed only on a single claim. The court noted the conflict between opinion and judgment and held that the judgment controlled over the conflicting language of the opinion, even though the judgment was obviously an incorrect disposition under that opinion. Thus, the judgment controls if a conflict is apparent.

We have therefore looked to see if there is a conflict between the judgment and the opinion. The Supreme Court:

ORDERED, in accordance with the Court's opinion, that:

1) That portion of the judgment of the court of appeals regarding United Mobile Network, L.P.'s damages claim for conversion is reversed;

2) The remainder of the judgment of the court of appeals is affirmed;

3) Judgment is rendered that United Mobile Networks, L.P. take nothing from Ronny Deaton and Barbara Deaton;

4) Ronny Deaton and Barbara Deaton shall recover from United Mobile Networks, L.P., which shall pay, the costs in this Court and in the court of appeals.

The language of the judgment does not conflict with that of the opinion. Indeed, the relevant portions are almost identical in the language used. The judgment thus provides no additional guidance.

■ The issue of attorney's fees assessed against Ronny Deaton at trial was never raised on the initial appeal. By failing to present a point or argument, Ronny Deaton waived his right to complain of any error in the assessment of those fees, and this court would have erred if we had reversed on that ground in the absence of properly assigned error. *Vawter v. Garvey*, 786 S.W.2d 263 (Tex.1990).

■ Attorney's fees were likewise not explicitly addressed by the Supreme Court in its opinion or judgment. We find that we cannot, however, ignore the direct and mandatory language of the Supreme Court's judgment and the entire lack of any complaint by UMN about the language used by the Court in setting out its decision. The competing theory is that the "take nothing" language must be read only in context with multiple other documents and the history of the case, the points of error filed in this court, and the writ filed and granted with the Supreme Court.

■ If we concluded that when any court makes a general statement that a plaintiff "take nothing" from a defendant, that statement must be read in conjunction with other unspecified documents or background information before execution is possible, then we would add a complicated requirement that would create uncertainty in all judgments.[3]

---

**2.** The judgment is issued along with the opinion, and the mandate is issued when all subsequent acts are complete. The letter from the Supreme Court that accompanied the opinion and judgment states that the mandate will track the language of the judgment unless a motion for rehearing is granted or some other need for change becomes apparent. Thus, although we speak of the judgment throughout this opinion, any reference to its contents applies equally to the final mandate.

**3.** Because of this ruling, we need not address the additional argument that if the underlying judgment that supported the award of attorney's fees has been reversed then the award of attorney's fees automatically falls by the wayside. In *Rob-*

*inwood Bldg. & Dev. Co. v. Pettigrew*, 737 S.W.2d 110, 112 (Tex.App.-Tyler 1987, no writ), the Tyler court stated that a party may not be penalized for a successful appeal, by requiring that party to pay his losing opponent's appellate attorney's fees, stating that "it is implicit in the court's judgment that all the attorney's fees awarded, trial and appellate, are conditioned on the judgment's successful survival of the appellate process." *Robinwood*, 737 S.W.2d at 112; *see also McVeigh v. Lerner*, 849 S.W.2d 911, 913 (Tex. App.-Houston [1st Dist.] 1993, writ denied)(holding that a party could not wait until a judgment successfully survived the appellate process and stood at the threshold of execution and then complain for the first time about the facially unconditional nature of attorneys' fees contained in the judgment.) The failure to complain about

Because UMN did not timely complain to the Supreme Court about that ultimate holding, it is now bound by that holding.

The judgment of the trial court is reversed, and the trial court is ordered to enter a declaratory judgment declaring the judgment lien invalid and removing the cloud from the title to Deaton's property.

### ON MOTION FOR REHEARING

On rehearing, the appellee suggests that we have held in our opinion that the reading of multiple documents in order to determine the outcome of a case would create complication and uncertainty in all judgments. What we said was that the requirement of the reading of unspecified documents or background information would create uncertainty in all judgments. We were not suggesting that the judgments themselves would not be read. A judgment is a special legal instrument showing the outcome of the case, the ultimate holding. When there is a trial court judgment and later judgments by appellate courts, the ultimate judgment issued by the highest court will control. This does not mean that when there are references to the lower court judgments in the case that these should not be sought out. The judgments themselves are not only the ultimate outcome of the case, but these are the legal instruments that may be relied upon by anyone seeking the results of the case, such as those searching the abstracts of the judgments concerning the title of the land, those checking for indebtedness of a judgment debtor, and the media and other parties seeking generally to know the outcome of the case.

The appellee contends in the Motion for Rehearing that the Supreme Court judgment in question would require a reading of multiple documents to determine its outcome. But the only other documents that the Supreme Court judgment requires to be read are the judgment of the court of appeals and the judgment of the trial court.

Once a money judgment is rendered, it does not matter whether a case is based upon contract, tort, or some other legal theory. Any matter involving issue preclusion or collateral estoppel would be a legal matter between the parties and not for those reading a judgment. When a court renders a take-nothing judgment, it indicates that there is no money judgment in the case against the defendants. Courts should carefully spell out in the judgment itself the terms of any injunctive relief granted, because unlike the money judgment, its terms require more specificity.

It is not for this court to decide whether the Supreme Court had jurisdiction over the entire case. The Supreme Court has explicitly held that when its jurisdiction is properly invoked by one point set out in an application for writ of error, it then acquires jurisdiction over the entire case.[4]

This intermediate appellate court is not in a position to alter, modify, or interpret the judgment of the Supreme Court in this matter. This relief should be sought from the court entering the order, that being the Supreme Court of the State of Texas.

The Motion for Rehearing is overruled.

the award of fees on direct appeal waived the complaint. Id. at 913.

In this case a part of UMN's judgment did not fall. UMN obtained a declaratory judgment in its favor affirming the noncompetition contract and directing its application in compliance with TEX. BUS. & COM.CODE ANN. § 15.51 (Vernon Supp. 1998). This court affirmed that portion of the judgment, and the issue was not brought before or accepted by the Supreme Court for review. Thus, our affirmance was the final ruling on that aspect of the case.

**4.** *Stafford v. Stafford,* 726 S.W.2d 14, 15 (Tex. 1987); *Harry Eldridge Co., Inc. v. T.S. Lankford & Sons, Inc.,* 371 S.W.2d 878 (Tex.1963).