Robert M. GRIFFIN, Robert M. Griffin, Jr., Charles W. Conrad, Marvin Ogilvie, and Marie Ogilvie, Appellants/Cross–Appellees.

v.

Larry T. LONG, L. Allan Long, And B. Virginia Long, In Their Capacities As Trustees of The Lawrence Allan Long Trust, The Charles Edward Long Trust, The Larry Thomas Long Trust, And The John Stephen Long Trust d/b/a The Long Trust, Appellees/Cross–Appellants.

No. 12–09–00260–CV.

Court of Appeals of Texas, Tyler.

Nov. 9, 2011.

· Rex A. Nichols Jr., Andrew G. Khoury, for Appellants.

· Thomas F. Loose, F. Franklin Honea, Mike Hatchell, for Appellees.

## MEMORANDUM OPINION ON REHEARING

SAM GRIFFITH, Justice.

Appellees/Cross–Appellants filed a motion for rehearing, which is overruled. However, we withdraw our opinion issued on May 11, 2011, and substitute the following opinion in its place.

Appellants/Cross–Appellees Robert M. Griffin, Robert M. Griffin, Jr., Charles W. Conrad, Marvin Ogilvie, and Marie Ogilvie (collectively the Griffins), in their sole issue, appeal from the judgment of the trial court, challenging its determination of the accrual date for postjudgment interest.

Appellees/Cross–Appellants Larry T. Long, L. Allan Long, and B. Virginia Long, in their capacities as Trustees of the Lawrence Allan Long Trust, the Charles Edward Long Trust, the Larry Thomas Long Trust, and the John Stephen Long Trust d/b/a the Long Trust (collectively the Long Trusts), also appeal the judgment of the trial court, raising three issues in their cross-appeal. We modify the judgment of the trial court, and as modified, affirm.

## BACKGROUND

The Griffins sued the Long Trusts in 1997.[1] The Griffins sought, in part, (1) a share of an $11,000,000.00 settlement of a "take or pay" lawsuit involving the Long Trusts and the Tejas Gas Company (the *Tejas* settlement), (2) a declaration that the 1978 and 1982 letter agreements the parties operated under were valid and enforceable, (3) an order for specific performance requiring the Long Trusts to assign interests in gas wells to the Griffins

---

1. The underlying factual scenario is complicated and need not be repeated here. The facts will be discussed only as necessary to the disposition of this appeal. For a detailed recitation of the facts and the procedural history, *see Long Trusts v. Griffin,* 144 S.W.3d 99 (Tex.App.-Texarkana 2004), *aff'd in part and rev'd in part,* 222 S.W.3d 412 (Tex.2006).

in compliance with the letter agreements, and (4) reformation of certain assignments executed on December 20, 2000.

After a bench trial, the trial court signed its "Amended Final Judgment" on February 4, 2003 (the 2003 judgment), awarding most of the relief sought by the Griffins. The Long Trusts appealed to the Texarkana court of appeals, which reversed in part and modified the judgment, but otherwise affirmed the trial court's judgment. The Long Trusts then appealed to the Texas Supreme Court, which reversed the court of appeals' judgment in part and remanded the case to the trial court for the limited purpose of redetermining attorney's fees. As a result of this reversal, the Griffins were entitled to significantly less relief than they had been awarded in the 2003 judgment. For example, they no longer had any interest in the *Tejas* settlement, and the 1978 and 1982 letter agreements were held to be unenforceable, at least as to future wells that would have otherwise fallen within the letter agreements' provisions. Other portions of the 2003 judgment, such as the order requiring reformation of the December 2000 assignments, continued to be effective and enforceable.

Upon the supreme court's remand to the trial court, a judge was assigned to preside over the remaining attorney's fees issue. On August 20, 2008, the court sent a letter to the parties in which it informed them that neither side would be entitled to attorney's fees. According to a docket sheet notation, the court and the parties participated in a telephonic hearing on October 7, 2008, regarding the attorney's fees issue. The docket sheet also contains an entry on that same date, noting that the "8/20/08 determination [is] modified to award [attorney's] fees to [the Griffins] in the amount of $30,000.00." [2]

The trial court signed its "Final Judgment After Appeal" on May 30, 2009 (the 2009 judgment). In this judgment, the trial court incorporated all prior judgments, which included the 2003 judgment to the extent it was not reversed on appeal. In addition, the trial court awarded attorney's fees to the Griffins in the amount of $30,000.00 and ordered postjudgment interest at the rate of 10% to accrue from May 30, 2009. The Griffins appealed and the Long Trusts cross-appealed.

## ACCRUAL OF POSTJUDGMENT INTEREST

In their sole issue, the Griffins argue that the trial court erred when it identified the postjudgment interest accrual date in the 2009 judgment as May 30, 2009. The Griffins contend that the correct accrual date was the date the trial court rendered its 2003 judgment.

### Standard of Review and Applicable Law

■ Postjudgment interest is regulated by statute, and as such, its application is a question of law that we review de novo. *See Advanced Messaging Wireless, Inc. v. Campus Design, Inc.*, 190 S.W.3d 66, 71 (Tex.App.-Amarillo 2005, no pet.) (citing *Columbia Medical Center v. Bush ex rel. Bush*, 122 S.W.3d 835, 865 (Tex.App.-Fort Worth 2003, pet. denied)).

■ Postjudgment interest is compensation allowed by law for the use or detention of money. *Sisters of Charity of the Incarnate Word v. Dunsmoor*, 832 S.W.2d 112, 119 (Tex.App.-Austin 1992, writ denied). It is recoverable on any money judgment in this state as long as the judgment specifies the postjudgment

---

**2.** The telephonic hearing was not recorded or otherwise transcribed. Therefore, the appellate record does not include a record of the hearing.

interest rate. TEX. FIN.CODE ANN. § 304.001 (Vernon 2006). Postjudgment interest is computed from the date of rendition of judgment and runs until the date of satisfaction. TEX. FIN.CODE ANN. § 304.005(a) (Vernon 2006). Generally, a judgment is rendered when the decision is officially announced orally in open court, by memorandum filed with the clerk, or otherwise announced publicly. *Garza v. Tex. Alcoholic Beverage Comm'n*, 89 S.W.3d 1, 6 (Tex.2002).

### Discussion

■ In previously addressing this issue in another case involving the Long Trusts, we stated the general rule that,

> after examining the entire procedural history of a dispute, a party that *ultimately* prevails is entitled to postjudgment interest from the date the original judgment was rendered, irrespective of whether the original judgment was erroneous, because that is the date upon which the trial court should have rendered a correct judgment.

*Long Trusts v. Castle Tex. Prod. Ltd. P'ship*, 330 S.W.3d 749, 753 (Tex.App.-Tyler 2010, pet. filed) (emphasis in original). We see no reason to depart from this general rule here.

The trial court awarded a judgment favoring the Griffins on February 4, 2003. The Long Trusts appealed to the Texarkana court of appeals, which reversed in part, modified portions of the judgment, and affirmed the trial court's judgment in all other respects. *See Long Trusts*, 144 S.W.3d at 112, *aff'd in part and rev'd in part*, 222 S.W.3d 412 (Tex.2006). The Long Trusts then appealed to the Texas Supreme Court, which reversed the award relating to the *Tejas* settlement, and also

held that the 1978 and 1982 letter agreements were not enforceable for future wells because they violated the statute of frauds. *Long Trusts*, 222 S.W.3d at 415–17. The supreme court then remanded the case to the trial court for the limited purpose of redetermining attorney's fees. *Id.* at 417. Since the trial court should have issued a correct judgment when it issued its judgment on February 4, 2003, postjudgment interest began to accrue on that date.[3] *See Long Trusts*, 330 S.W.3d at 753–54.

We sustain the Griffins' sole issue.

### CROSS-APPEAL

In three cross-issues, the Long Trusts argue that (1) the trial court incorrectly set the postjudgment interest rate at 10%, (2) the trial court abused its discretion by awarding the Griffins $30,000.00 in attorney's fees, and finally, (3) the trial court's 2009 judgment lacks the required specificity and definiteness to be enforceable.

### POSTJUDGMENT INTEREST RATE

■ In their first cross-issue, the Long Trusts argue that, in the 2009 judgment, the trial court erroneously set the postjudgment interest rate at 10%. They contend that postjudgment interest should be calculated from May 30, 2009, the date of the 2009 judgment, and that 10% was not the postjudgment interest rate on that date. The Griffins maintain that postjudgment interest began to accrue on February 4, 2003, and the postjudgment interest rate on that date should apply.

The Griffins argue the proper rate is 10% as found by the trial court in its 2003 judgment, without pointing to any evidence in the record substantiating that assertion.

---

**3.** We express no opinion about when postjudgment interest would begin to accrue if the trial court's judgment had been reversed in its entirety and the cause remanded for a new trial.

Nevertheless, we exercise our discretion to take judicial notice of the correct rate. *See* Tex.R. Evid. 201(b)(2), (c), (f) (at any stage of proceeding, court in its discretion and on its own motion can take judicial notice of facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned); *Pettus v. Pettus,* 237 S.W.3d 405, 423 (Tex.App.-Fort Worth 2007, pet. denied) (appellate court may take judicial notice of postjudgment interest rate).

When the court issued its judgment in 2003, the postjudgment rate was calculated as follows:

Sec. 304.003. JUDGMENT INTEREST RATE: INTEREST RATE OR TIME PRICE DIFFERENTIAL NOT IN CONTRACT.

(a) A money judgment of a court of this state ... earns postjudgment interest at the rate determined under this section.

(b) On the 15th day of each month, the consumer credit commissioner shall determine the postjudgment interest rate to be applied to a money judgment rendered during the succeeding calendar month..

(c) The postjudgment interest rate is:

(1) the auction rate quoted on a discount basis for 52–week treasury bills issued by the United States government as most recently published by the Federal Reserve Board before the date of computation;

(2) 10 percent a year if the auction rate described by Subdivision (1) is less than 10 percent; or

(3) 20 percent a year if the auction rate described by Subdivision (1) is more than 20 percent.

Act of May 10, 1999, 76th Leg., R.S., ch. 62, § 7.18, 1999 Tex. Gen. Laws 127, 232 (amended 2003, 2005) (current version at Tex. Fin.Code Ann. § 304.003 (Vernon 2006)). We have sustained the Griffins' issue in which they argue that postjudgment interest began to accrue on February 4, 2003, the date of the trial court's original judgment. On February 4, 2003, the auction rate for fifty-two week treasury bills quoted on a discount basis was 6%.[4] Because that rate was less than 10%, the trial court correctly determined that 10% was the applicable postjudgment interest rate. *See id.*

The Long Trusts' first cross-issue is overruled.

## ATTORNEY'S FEES

In their second cross-issue, the Long Trusts contend in a single multifarious issue that the trial court abused its discretion in awarding attorney's fees because (1) the Griffins did not prevail on their claims for which fees may be properly awarded, (2) the Griffins did not incur any fees, and (3) the evidence is legally and factually insufficient to support the trial court's award of attorney's fees.

### Standard of Review

■ Generally, we review a trial court's decision to either grant or deny attorney's fees under an abuse of discretion standard. *See Ridge Oil Co., Inc. v. Guinn Invs., Inc.,* 148 S.W.3d 143, 163 (Tex.2004). In contrast, we review a trial court's determination regarding the amount of attorney's fees for legal and factual sufficiency of the evidence. *See Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998). In reviewing a trial court's findings for legal and factual sufficiency of

4. *Federal Reserve Bank—Fifty–Two Week Treasury Bill Auction Rate Quoted on a Discount Basis by Issue Date,* http://www.federal reserve.gov/releases/h15/data/Monthly/discontinued_AH_Y1.txt (last visited May 5, 2011).

the evidence, we apply the same standards we apply in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994).

When reviewing legal sufficiency of the evidence, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). The evidence is legally sufficient if it would enable fair-minded people to reach the finding under review. *Id.* at 827. If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex. 1998). In reviewing factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

When determining whether an award for attorney's fees is excessive, we may "look at the entire record and view the matter in light of the testimony, the amount in controversy, the nature of the case, and the court's own common knowledge and experience as lawyers and judges." *McFadden v. Bresler Malls, Inc.,* 548 S.W.2d 789, 790 (Tex.App.-Austin 1977, no writ). We may not, however, substitute our own judgment for that of the trial court. *Walker v. Gutierrez,* 111 S.W.3d 56, 63 (Tex.2003).

### Applicable Law

Generally, a party may not recover attorney's fees unless such an award is authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 311 (Tex.2006). For example, a person may recover reasonable attorney's fees in suits on an oral or written contract. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 2008). Additionally, the trial court may award such reasonable and necessary attorney's fees as are equitable and just in a suit for declaratory judgment. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 2008).

In reviewing the reasonableness of an award of attorney's fees, the reviewing court should consider: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex.1997); *Aquila Sw. Pipeline, Inc. v. Harmony Exploration, Inc.,* 48 S.W.3d 225, 240–41 (Tex.App.-San Antonio 2001, pet. denied).

When reviewing the record, we look to see whether any evidence supports the challenged finding. *Brockie v. Webb,* 244 S.W.3d 905, 909 (Tex.App.-Dallas 2008, pet. denied). A trial court is not required to consider all of the factors in every case because the factors are simply guidelines for the trial court to consider, not elements of proof. *Petco Animal Supplies, Inc. v. Schuster,* 144 S.W.3d 554, 567 (Tex.App.-

Austin 2004, no pet.); *Academy Corp. v. Interior Buildout & Turnkey Constr., Inc.,* 21 S.W.3d 732, 742 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Moreover, it is not necessary that the record include evidence on each of these factors. *See Burnside Air Conditioning v. T.S. Young,* 113 S.W.3d 889, 897–98 (Tex.App.-Dallas 2003, no pet.). As a general rule, the nature and extent of the attorney's services are expressed by the number of hours and the hourly rate. *See id.* There is, however, no rigid requirement that these facts must be introduced into evidence to support a finding that attorney's fees are necessary and reasonable. *See id.; Hays & Martin, L.L.P. v. Ubinas–Brache, M.D.,* 192 S.W.3d 631, 636 (Tex.App.-Dallas 2006, pet. denied).

 When a claim for attorney's fees is based on Chapter 38 of the Texas Civil Practice and Remedies Code, the trial court may take judicial notice of the usual and customary attorney's fees, and those fees are presumed to be reasonable, although the presumption may be rebutted. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 38.003–.004 (Vernon 2008). However, in a declaratory judgment action, a party enjoys neither the presumption of reasonableness nor the availability of judicial notice. *See Gorman v. Gorman,* 966 S.W.2d 858, 867 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). But unlike a suit under Chapter 38, attorney's fees may be awarded to the nonprevailing party in a suit for declaratory judgment. *See Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 637 (Tex. 1996); *Scottsdale Ins. Co. v. Travis,* 68 S.W.3d 72, 77 (Tex.App.-Dallas 2001, pet. denied). Finally,

[a] reversal of a trial court's decision on a declaratory judgment does not necessarily require reversal of an award of attorney's fees to the party who pre-

vailed in the trial court. [citations omitted].

A trial court's grant or denial of attorney's fees in a declaratory-judgment action need not be reversed on appeal unless the complaining party clearly shows the trial court abused its discretion.

*City of Temple v. Taylor,* 268 S.W.3d 852, 858 (Tex.App.-Austin 2008, pet. denied).

***The Long Trusts' Arguments***

 **1. *The Griffins are not prevailing parties, and thus are not entitled to attorney's fees.*** It is undisputed that the Griffins prevailed at trial, as evidenced in the 2003 judgment. The Griffins prevailed on their various contract claims, as well as their claim for declaratory relief. However, after the Texarkana court of appeals and Texas Supreme Court issued their respective opinions and judgments, very little of the original relief granted to the Griffins remained. Nonetheless, the Griffins still prevailed on their reformation claim as to the December 2000 assignments.

First, we note that even though the declaratory judgment claim was reversed, an award for fees based on that claim need not necessarily be reversed after appeal, and the Griffins were not required to be a prevailing party on their claim for declaratory relief in order to obtain a fee award. *See Barshop,* 925 S.W.2d at 637; *City of Temple,* 268 S.W.3d at 858. Next, to the extent that the trial court awarded fees in the 2009 judgment solely based on the remaining contractual claim on which the Griffins prevailed-the reformation claim-the Griffins were not required to obtain monetary relief on that claim in order to be awarded attorney's fees. *See Rasmusson v. LBC PetroUnited, Inc.,* 124 S.W.3d 283, 287 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (stating failure to recov-

er monetary damages does not preclude award of attorney's fees); *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 796–97 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (noting recovery of "something of value" supports award of attorney's fees, even absent an award of monetary damages); *Rodgers v. RAB Investments, Ltd.*, 816 S.W.2d 543, 551 (Tex.App.-Dallas 1991, no writ) (same).

Even though significant portions of the award to the Griffins have been reversed, the Griffins still obtained affirmative relief in the form of reformation of the December 2000 assignments. Nothing in the record before us suggests that this reformation is not "something of value." *See Butler*, 51 S.W.3d at 796–97. The Long Trusts argue that this relief is not of sufficient magnitude to warrant classifying the Griffins as prevailing parties because one of the conditions of reformation required the Griffins to execute a joint operating agreement. However, the Long Trusts have not shown how this requirement diminishes the value of the reformation awarded.

**2. *The Griffins did not actually incur attorney's fees in the prosecution of their claims.*** The Long Trusts contend that (1) the Griffins and their attorneys operated under a contingency fee contract, (2) the primary relief awarded after completion of the appeals consisted of reformation of the December 2000 assignments, and (3) therefore no monetary damages other than fees were awarded. Consequently, their argument continues, the contingency never occurred, and thus no fees were incurred.

First, it is not clear that to be awarded attorney's fees, the plaintiff is required to actually incur attorney's fees, at least not in the manner that the Long Trusts claim. *Compare AMX Enterprises, L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 520 (Tex.App.-Fort Worth 2009, no pet.) (proof

of fees actually incurred is not prerequisite to recovery of attorney's fees), *with Simmons v. Kuzmich*, 166 S.W.3d 342, 350 (Tex.App.-Fort Worth 2005, no pet.) (holding, without citing authority, that admission of attorney represented by his own law firm that neither he nor anyone from his office was billing or incurring fees and that he only "lost some time from the office" precluded award of attorney's fees).

■ Second, in any event, the fact that the attorney and the claimant operated under a contingency fee agreement does not mean that fees were not incurred. *Sloan v. Owners Ass'n of Westfield, Inc.*, 167 S.W.3d 401, 404 (Tex.App.-San Antonio 2005, no pet.). In *Sloan*, the San Antonio court of appeals rejected the argument made here by the Long Trusts, namely that because the plaintiff had a contingent fee agreement with its counsel, it had not incurred any attorney's fees. *See id.* We agree with the analysis in *Sloan* as applied to the facts of the instant case.

**3. *The evidence is legally and factually insufficient to support the trial court's award of attorney's fees.***

**A. *Necessity of a Reporter's Record***

■ In our prior opinion, we held that we were unable to review the trial court's determination of the amount of fees due to the Long Trusts' failure to include a reporter's record from the telephonic hearing at which the trial court decided the attorney's fee issue after remand from the Texas Supreme Court. *See Griffin v. Long*, No. 12–09–00260–CV, 2011 WL 1849271, at *6–8 (Tex.App.-Tyler May 11, 2011) (mem. op.).

In their motion for rehearing, the Long Trusts contend that this court was required to presume that the telephonic hearing was not evidentiary in nature, and that, as such, a reporter's record is not

necessary. *See Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 783 (Tex.2005). Consequently, their argument continues, we can review the legal and factual sufficiency of the evidence as to the amount of attorney's fees awarded by the trial court. In *Holten,* the Texas Supreme Court held that "appellate courts should presume that pretrial hearings are nonevidentiary, and that the trial court considered only the evidence filed with the clerk" unless "the proceeding's nature, the trial court's order, the party's briefs, or other indications show that an evidentiary hearing took place in open court." *Id.* at 783. In that circumstance, "a complaining party must present a record of that hearing to establish harmful error." *Id.*

The Griffins argue that the holding in *Holten,* by its express language, applies only to pretrial hearings. *See id.* They argue that since the attorney's fees issue was the last issue to be decided in the case after full trial, appeal, and subsequent remand, the telephone conference is not a pretrial hearing and the reasoning in *Michiana* does not apply. *But see W & F Transp., Inc. v. Wilhelm,* 208 S.W.3d 32, 37 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (stating that the fact that *Holten* addressed a pretrial hearing instead of a trial does not change the court's analysis). However, we need not address this argument because the Griffins stated in their original cross-brief that they

> disagree with the statement that the trial court after remand requested [the Griffins] to provide "evidence on apportionment of fees by live testimony or affidavit." In fact the trial court never provided [the Griffins] the opportunity to submit additional evidence but instead relied on the *uncontroverted* [a]ffidavit from the original trial.

*See Exterior Bldg. Supply, Inc. v. Bank of Am., N.A.,* 270 S.W.3d 769, 771 (Tex.App.-

Dallas 2008, no pet.) (holding that motion for new trial hearing was nonevidentiary when parties acknowledged that a hearing occurred but neither party asserted that the trial court heard new evidence at the hearing). Moreover, the trial court's judgment recites that the court considered the affidavit in assessing the amount of attorney's fees to be awarded, but makes no reference to any other evidence. Taking these facts together, we conclude that the hearing was not evidentiary in nature, and we can review the sufficiency of the evidence to support the amount of fees based on the affidavit from the original trial.

**B. Failure to Request or Obtain Findings of Fact or Conclusions of Law**

We note that the Long Trusts did not request or obtain findings of fact or conclusions of law. Where findings of facts and conclusions of law are not requested or filed, it will be implied that the trial court made all the findings necessary to support its judgment. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990) (per curiam); *Toles v. Toles,* 45 S.W.3d 252, 264 (Tex.App.-Dallas 2001, pet. denied); *Universal Health Servs., Inc. v. Thompson,* 24 S.W.3d 570, 577 (Tex.App.-Austin 2000, no pet.). "In determining whether some evidence supports the judgment and the implied findings of fact, 'it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in its nature.'" *Worford,* 801 S.W.2d at 109. The judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Id.* We therefore must affirm the district court's award of attorney's fees if the award can be upheld on any legal theory that finds support in the evidence. *See id.*

## C. *Legal and Factual Sufficiency of the Evidence Supporting the Amount of Fees Awarded*

■ In their claim challenging the sufficiency of the evidence, the Long Trusts first argue that the Griffins failed to present a new affidavit or other evidence demonstrating the percentage of time spent on the remaining portion of the assignment claim that was still valid after most of the other relief was reversed—i.e. reformation of the December 2000 assignments. Even though it is partially cast as a failure to segregate claim, this contention, in essence, is a component of the Long Trusts' argument that the evidence is legally and factually insufficient to support the amount of fees awarded.

In the Griffins' counsel's affidavit, he requested $100,000 in attorney's fees at trial in 2003 on all claims. In the 2003 judgment, the trial court awarded $35,000 in attorney's fees.[5] In its 2009 judgment, it awarded $30,000 in attorney's fees. Counsel stated that he spent approximately 300 hours on the entire suit, while associate counsel spent 344.50 hours. The affidavit itemized the total amount based on a percentage for each portion of the litigation, and as relevant here, thirty percent of counsel's time was spent on the "assignment claim." The affidavit expressly includes the reformation claim as part of the "assignment claim."

The appellate court judgments left only a portion of the assignment claim intact. When the Texas Supreme Court remanded the suit for a limited redetermination of attorney's fees, the only evidence before the court was counsel's affidavit used to support fees in the original trial that led to the 2003 judgment. The Long Trusts speculate that the trial court simply awarded $30,000.00 based on the thirty percent of the requested $100,000.00 for the assignment claim in the 2009 judgment. The Long Trusts point out that only a portion of that "assignment claim" remains valid under the 2009 judgment, and argue that the fees spent on that part of the assignment claim could not amount to $30,000.00 due to reversals on portions of that claim in the interim by appellate courts. Essentially, the Long Trusts claim that there is no evidence in the record to support that the Griffins' counsel accrued $30,000.00 in fees related to the December 2000 assignment claim. As part of its argument, the Long Trusts implicitly suggest that an award of fees must be determined only by mathematical formula.

■ However, the trial court, in its 2003 judgment, could have awarded fees to the Griffins pursuant to the declaratory judgment portion of the assignment claim. *See Long Trusts,* 144 S.W.3d at 109, *aff'd in part and rev'd in part,* 222 S.W.3d 412 (Tex.2006) (noting that "[a]dditionally, one of the Griffins' causes of action here was for declaratory judgment, and the trial court rendered judgment declaring some of the rights and obligations of both the Griffins and the Trusts. The court may award reasonable and necessary attorneys' fees in declaratory judgment actions....").[6] The declaratory judgment

---

5. The Griffins and their counsel executed a contingency fee agreement in which the Griffins agreed to compensate their attorneys in an amount of thirty-five percent of their total recovery in the event of a successful trial and forty percent in the event of an appeal.

6. The appellate record before us does not disclose the analysis the trial court conducted

in arriving at its fee award in the 2003 judgment. Likewise, the trial court did not disclose the analysis it conducted in awarding fees in the 2009 judgment, except the statements that it relied on the original affidavit, as well as the opinion of the Texas Supreme Court.

portion was later reversed by the Texas Supreme Court. *Long Trusts*, 222 S.W.3d at 416–17 (Tex.2006). But reversal of that claim does not necessarily mean that the award of fees must also be reversed. *See City of Temple*, 268 S.W.3d at 858. As we have already stated, fees may be awarded to the nonprevailing declaratory judgment claimant. *See Barshop*, 925 S.W.2d at 637. Moreover, contrary to the Long Trusts' implied suggestion, fees need not be determined by precise mathematical formula. *See Star Houston, Inc. v. Kundak*, 843 S.W.2d 294, 299 (Tex.App.-Houston [14th Dist.] 1992, no writ). Rather, a trial court has the discretion to fix the amount of attorney's fees. *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 683 (Tex. App.-Fort Worth 1998, pet. denied). Also, the trial court "is not mandated to award attorney's fees equal to those testified to at trial," even when that testimony is uncontroverted. *Nat'l Mar–Kit, Inc. v. Forrest*, 687 S.W.2d 457, 460 (Tex.App.-Houston [14th Dist.] 1985, no writ).

Without a request for findings of fact and conclusions of law, we presume the trial court originally awarded attorney's fees to the Griffins in part on their claim for declaratory relief, and the reversal of that portion of the award need not necessarily nullify the award of fees when the trial court determined attorney's fees on remand. *See Worford*, 801 S.W.2d at 109; *Barshop*, 925 S.W.2d at 637; *City of Temple*, 268 S.W.3d at 858.

Applying the *Andersen* factors, counsel in his affidavit, stated as follows:

This lawsuit arises out of transactions that occurred as far back as 1978 and involve[s] multiple parties as Plaintiffs. Each Plaintiff often had facts and circumstances unique to him or her. On behalf of the Plaintiffs I and others at my firm investigated the pertinent facts, researched the applicable law and en-

gaged in extensive discovery; there were several pretrial hearings, including at least two unsuccessful motions for summary judgment filed by the Defendants, and the trial last four and one-half days.

The lawsuit was filed in 1997, and yet the case continues. The primary attorney spent approximately 300 hours on the entire suit, while associate counsel spent 344.50 hours, and the Griffins placed no time constraints on the representation. The customary fee in the locality for similar services was approximately $250.00 to $300.00 per hour for counsel and $150.00 per hour for associate counsel. The Griffins' counsel points out in the affidavit that the novelty and complexity of the case was one of the reasons the parties agreed to try the case to the bench rather than to a jury. Counsel also averred that based on past experience with the Long Trusts, the case would not be settled and a trial would be required. The relationship began in 1997 when the Griffins hired counsel in place of their former attorney and continues to the present day. The Griffins' counsel and associate counsel are experienced and well known in the local legal community where they practice. Counsel states that he has experience in the field of oil and gas law. The case was taken on a contingency basis, so the risk of loss could have been an important factor. The trial court awarded $30,000.00 of the original $100,000.00 requested by counsel.

Given the record before us, we conclude that there was at least some evidence supporting the amount of attorney's fees and that the evidence was not so insufficient that the court's determination was manifestly unjust. Given the lack of specific findings of fact and conclusions of law, we conclude that the Long Trusts failed to demonstrate that the trial court clearly abused its discretion in making its fee

determination, especially since the trial court here, in its 2009 judgment, could have awarded fees based on the declaratory judgment action and reduced the amount awarded accordingly to account for the reversal of that portion of the assignment claim.

The Long Trusts' second cross-issue is overruled.

## JUDGMENT

In their third cross-issue, the Long Trusts contend that the 2009 judgment lacks the required specificity and definiteness to constitute an enforceable order of the court.

### Standard of Review and Applicable Law

▮▮▮▮ Public policy favors the validity of judgments, and thus there is a general presumption of validity extending to district court judgments. *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 251 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (citing *Crawford v. McDonald*, 88 Tex. 626, 33 S.W. 325, 328 (1895)). Without such a presumption, a district court's judgment would have very little import and there would be no end to troublesome litigation. *Id.* As explained by one court,

a judgment, the final action taken by a court of competent jurisdiction in disposing of matters properly before it, is of such solemn import and of such supreme importance that every intendment should be given it in order to sustain its validity, that to give further emphasis to the thought would be almost a matter of triteness. Judgments constitute the considered opinion of courts; they are judicial acts with the primary objective in view of concluding controversies with as high a degree of exact justice as it is humanly possible to do. When an attack is made upon a judgment, whether directly or collaterally, all presumptions consonant with reason are indulged in

order to uphold the binding effect of such judgment.

*Id.* (quoting *Jackson v. Slaughter*, 185 S.W.2d 759, 761 (Tex.Civ.App.-Texarkana 1944, writ ref'd w.o.m.)). In determining the validity of a judgment, the substance of the judgment and not the form controls, and no particular wording or phraseology is required. *Gen. Elec. Capital Auto Fin. Leasing Servs., Inc. v. Stanfield*, 71 S.W.3d 351, 355 (Tex.App.-Tyler 2001, pet. denied).

▮▮▮▮ However, a judgment must be sufficiently definite and certain to define and protect the rights of all litigants, or it should provide a definite means of ascertaining such rights, to the end that ministerial officers can carry the judgment into execution without ascertainment of facts not stated in the judgment. *Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex.1994). Thus, a judgment cannot condition recovery on uncertain events or base its validity on what the parties might or might not do postjudgment. *Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex.1985). A purported judgment that leaves undecided a question or an issue essential to the determination of the controversy between the parties is void for vagueness and uncertainty. *In re R.J.A.H.*, 101 S.W.3d 762, 763 (Tex.App.-Houston [1st Dist.] 2003, no pet.); *Am. Cas. & Life Ins. Co. v. Boyd*, 394 S.W.2d 685, 688 (Tex.Civ.App.-Tyler 1965, no writ).

▮▮▮▮ Texas courts generally construe orders and judgments under the same rules of interpretation as those applied to other written instruments. *Azbill v. Dallas Cnty. Child Protective Servs. Unit of Tex. Dep't of Human and Regulatory Servs.*, 860 S.W.2d 133, 136 (Tex.App.-Dallas 1993, no writ). Thus, a judgment may incorporate by reference an earlier

judgment or order in the same judicial proceeding into its terms. *See id.* The fact that dispositive rulings appear in more than one document does not necessarily affect the judgment's validity or definiteness. *See id.* at 137.

### Discussion

 The 2009 judgment stated in relevant part as follows:

> ORDERED that Defendants shall reform and execute the Assignments they made to Plaintiffs on December 20, 2000, consistent with the Amended Final Judgment dated February 10, 2003, and as reformed and modified in the opinions of the Sixth Court of Appeals and the Texas Supreme Court; it is further

> ORDERED that that [sic] the Amended Final Judgment dated February 10, 2003, is adopted and incorporated by reference into this Final Judgment After Appeal to the extent not inconsistent with the Judgment and Opinion of the Sixth Court of Appeals and the Judgment and Opinion of the Texas Supreme Court.

The Long Trusts contend that "[c]ompliance with the judgment, as now written, will require an independent construction of the terms of the Amended Final Judgment, as affirmed, modified and reversed in part by the Texarkana Court of Appeals and the Texas Supreme Court."

Contrary to the Long Trusts' argument, however, the judgment is not rendered void for vagueness or lack of definiteness or specificity by the fact that the 2003 judgment, the court of appeals' judgment, the supreme court's judgment, and the 2009 judgment must be read together. *See Deaton v. United Mobile Networks, L.P.,* 966 S.W.2d 113, 116 (Tex.App.-Texarkana 1998, pet. denied) (op. on reh'g) (stating trial court judgment can be read in conjunction with subsequent appellate

court judgment, implying that when appellate court judgment refers to or reverses trial court judgment in part, both judgments are read together). The trial court could properly incorporate the 2003 judgment to the extent it was not reversed by the court of appeals and the supreme court, as well as the judgments of the appellate courts, into the 2009 judgment, which in turn additionally awarded attorney's fees and postjudgment interest. *See Azbill,* 860 S.W.2d at 136. Each of those judgments conclusively identifies portions of the final relief awarded in the case, and when read together, all of the courts' judgments in this case dispose of the disputes between the parties. *See Deaton,* 966 S.W.2d at 116. We conclude that a ministerial officer can read the judgments and determine the relief awarded with sufficient certainty without ascertainment of facts not in the judgments.

In a related argument, the Long Trusts also complain that the 2009 judgment does not clearly explain how the parties are to reform the December 2000 assignments. However, as shown in the above quoted portion of the 2009 judgment, the parties were ordered to reform the judgments as specified in the prior judgments. Importantly, the 2003 judgment provided specific instructions relating to the December 2000 assignments, and as modified on appeal, that relief still stands. The time to complain of that relief was in the Long Trusts' prior appeal. We therefore conclude that the Long Trusts' waived that argument. *See Cook v. Cameron,* 733 S.W.2d 137, 140 (Tex.1987) (holding failure to bring issue in prior appeal that could have been brought resulted in waiver).

The Long Trusts' third cross-issue is overruled.

### DISPOSITION

We *modify* the judgment of the trial court to reflect that postjudgment interest

began to accrue on February 4, 2003, and as modified, we *affirm*.